**Cynthia L. FOLEY, Appellant–Plaintiff,**

v.

**Robert L. SCHWARTZ and Danny L. Collins, Appellees–Defendants.**

No. 78A04–1005–CT–305.

Court of Appeals of Indiana.

Jan. 31, 2011.

David W. Craig, Scott A. Faultless, Craig Kelley & Faultless, Indianapolis, IN, Attorneys for Appellant.

Richard T. Mullineaux, Crystal G. Rowe, Kightlinger & Gray, LLP, New Albany, IN, Attorneys for Appellee–Robert L. Schwartz.

## OPINION

BROWN, Judge.

Cynthia Foley appeals the trial court's grant of a motion to dismiss filed by Robert Schwartz. Foley raises one issue, which we revise and restate as whether the trial court erred in dismissing Foley's complaint on the basis that the court did not have personal jurisdiction over Schwartz. We reverse and remand.

The relevant facts follow.[1] According to the complaint, on May 27, 2007, Foley, who is a resident of Ohio, was riding on a four-wheel recreational motor vehicle (an "ATV") operated by Bruce Bastin on prop-

---

1. We note that Foley's Statement of Facts in her appellant's brief contains argument. We remind Foley that the Statement of Facts should be devoid of argument. *Ramsey v. Review Bd. of Ind. Dep't of Workforce Dev.,* 789 N.E.2d 486, 488 (Ind.Ct.App.2003).

erty owned by Danny Collins in Switzerland County, Indiana. On the property, an old culvert pipe had been left after it had previously been replaced in 2006 or early 2007 by the Switzerland County Highway Department, and "field grass had grown around the culvert pipe" which obstructed its ability to be seen. Appellant's Appendix at 81. Collins knew that the pipe was on his property, but he did not warn Bastin. At one point while operating the ATV, Bastin came upon the culvert pipe and "suddenly steered the [ATV] in an attempt to avoid striking [it], causing [the ATV] to tip-over, severely injuring [Foley]." *Id.* at 82.

In June 2007, Foley hired Schwartz, an attorney who was a resident of Ohio and licensed to practice law in Ohio but not Indiana, for representation in connection with the ATV accident. Schwartz sent a letter dated June 14, 2007, to Foley at her Cincinnati, Ohio address which stated in part:

RE: Accident of May 27, 2007

   Cynthia Foley vs Danny Collins

Dear Ms. Foley:

We are pleased to be of assistance to you in the matter of your unfortunate accident which occurred on May 27, 2007....

I am not an Indiana or Kentucky attorney but will help you in the best possible way.

I indicated to you that if I feel the case should be best conducted in Indiana or Kentucky I would endeavor to split any fee with another attorney under the same agreement that we have, at no additional charge to you....

\* \* \* \* \* \*

**PLEASE TRY TO OBTAIN PHOTO-GRAPHS OF TERRAIN AND PIPE FOR OUR CASE AND CALL ME IF YOU NEED HELP. PHOTOS ARE VERY IMPORTANT.**

Please do not sign any "Medical Lien" or other documents concerning payment in you [sic] doctor's office.... A "Medical Lien" on your case could severely effect [sic] any money you receive and the outcome of your claim....

If you have missed work and you want to make a lost wage claim, you will need to obtain a statement from your employer or some other proof of lost income....

We already have begun acquiring information. Since our initial discussions, we have notified the other party by letter of our representation....

\* \* \* \* \* \*

The most difficult part of any case is to determine the amount for which the case should be settled. A great number of factors go into our recommendation. We consider the facts of the accident, the nature and extent of the injuries, the medical bills and other losses that have been incurred, and the permanency of any injury. We will also consider the place where the suit would have to be filed....

*Id.* at 247–248. That same day, Schwartz sent a letter to Lazar Iglendza with State Farm Insurance Company, Collins's insurance provider, notifying Iglendza that he was representing Foley in the matter and asking Iglendza to phone him "to explain the type of insurance and the policy limits" of the policy. *Id.* at 250. The letter was addressed to a post office box in Bloomington, Illinois, but Iglendza worked in Indianapolis, Indiana and his mail was "electronically scanned and forwarded" to him in Indianapolis. *Id.* at 172. Also, Schwartz wrote a letter dated June 19, 2007, to Foley at her Cincinnati address explaining his fee agreement "in 'more En-

glish terms.'" *Id.* at 251. Iglendza sent a response to Schwartz on June 21, 2007.

On June 26, 2007, Foley and Schwartz signed a Contract for Contingent Fee Accident Case which stated in part:

> I hereby retain you, Robert L. Schwartz, as my attorney in the above-captioned case and all claims arising out of said accident claim or incident. I understand that you will represent me in all stages of this proceeding and will diligently prosecute this case to the best of your ability until settlement is reached or the complaint is filed and judgment results. I understand that I am hiring you to assist me in attempting to achieve a satisfactory settlement and I will consider your advice throughout the handling of this matter as to what is a reasonable settlement offer.
>
> \* \* \* \* \* \*
>
> I understand that you may associate with additional co-counsel as needed in the prosecution of this claim at your discretion....
>
> \* \* \* \* \* \*
>
> .... Your reasonable fee is subject to the current law, rules and guidelines such as DR 2–106, which may supersede the terms of this agreement.

*Id.* at 256.

Schwartz sent a letter dated September 27, 2007, containing a payment of $121.10 to Midwest Medical Copy Service, Inc, in Leo, Indiana, for records pertaining to Foley.

Schwartz sent letters dated February 27, 2008, to David Zerbe and Lana Swingler, both attorneys practicing in Indiana, asking if they were interested in joining as co-counsel on Foley's behalf and proposing that they would receive three-fourths of whatever compensation the case provided, with Schwartz taking one-fourth. The letters both stated:

> Mr. Collins has home owners insurance with State Farm Insurance Company. Recently, State Farm Insurance Company informally indicated they may deny liability, claiming there was no negligence on the part of their insured.... I presume that [Bastin] ... was covered as an insured person who would be responsible for negligent driving of the off-road vehicle.

*Id.* at 288, 290. Schwartz also sent a similar letter to Alan Trenz who was an attorney residing in Cincinnati, Ohio, but was licensed to practice law in Indiana.

Schwartz sent a letter dated March 5, 2008, to Linda Elam in Florence, Indiana, which stated that "[a] work crew had recently replaced the sewage drain pipes at 98 Swanson Road, prior to the incident of May 27, 2007.... Please let me know if your company has ever done work at the above address." *Id.* at 294. Schwartz sent a letter dated March 27, 2008, to a person in Florence, Indiana with an enclosed payment of $300.00 for her "investigation." *Id.* at 297. He sent a letter dated March 31, 2008, to the County Highway Department in Florence, Indiana (the "Highway Department"), asking it to "[k]indly direct this letter to your insurance carrier so that a claim may be made." *Id.* at 298. Schwartz sent another letter dated April 23, 2008, to the Highway Department stating that "[w]e have had no response" regarding the March 31, 2008 letter, and asking to "[p]lease contact us within 5 days, to advise us of your insurance company or as to how you will be handling this claim." *Id.* at 299.

At some point "in the later stages of the case" Schwartz contacted Gregory Coy, who at that time was the attorney for

Switzerland County.[2] *Id.* at 387. Schwartz initially phoned Coy who returned Schwartz's call, and they spoke "about the potential claim that [Foley] thought she had in Indiana against Switzerland County, or any party that Switzerland County would have hired to do the work that resulted in the ... pipes that were on the property." *Id.* at 391. During the conversation, Coy gave "some direction" to Schwartz about the case against Switzerland County and discussed "the immunity of the [S]tate...." *Id.* at 413.

Schwartz sent a letter dated April 29, 2008, to Stan White, an attorney located in Indianapolis, Indiana, which stated:

Dear Mr. White:

I am trying to email you a photograph that shows the ATV partially, as it was turned over in the grass. I will be sending you another group of pictures of the entire area at the scene of the accident.

Cynthia Foley returned to me after speaking with the driver of the ATV. He did not remember the make and model of the vehicle and she did not feel comfortable calling the owner about it.

A complete explanation of the accident will follow and I will be glad to meet with you and Ms. Foley in all respects.

I would agree to a 1/6 share of attorney fee plus expenses since the bulk of the work appears to be ahead of you....

*Id.* at 300.[3] Schwartz sent White another letter dated April 30, 2008 via FedEx to White's Indianapolis address which stated in part:

Dear Mr. White:

Thank you for speaking with me on April 29, 2008, regarding the claim of Cynthia Foley.

\* \* \* \* \* \*

Shortly after the incident [on May 27, 2007], the pipe was removed by Switzerland County. Mr. Collins has a Home Owners Insurance policy with State Farm Insurance Company, with a $300,000.00 limit. Recently, an adjuster from State Farm Insurance Company informally told me that they may deny liability.... We have not filed any actions at this time.

\* \* \* \* \* \*

I do not believe there would be a good claim against Switzerland County, Indiana, because of IC 34–13–3–3 **Immunity of governmental entity or employee**....

In any event, a tort claim was never made....

*Id.* at 304–305.

On May 1, 2008, Foley terminated Schwartz's employment as her representative, and on that same day Schwartz sent a letter to Foley at her Cincinnati, Ohio address, stating in part:

I had hoped you would not simply fire me, but that we would find Indiana Counsel together to present your claim, and that all of us could work together, without additional fee. Perhaps I did not make it clear that this would be the best way to proceed.

I am still willing to work with whatever Counsel you may choose. I have a rather large box of documents for you, and it would be much more efficient if I could

---

2. Coy is currently serving as judge for the Switzerland Circuit Court. On December 16, 2009, Judge Coy recused from this case, and on January 8, 2010, Judge James D. Humphrey was appointed special judge.

3. It appears that this letter was sent via fax. Appellant's Appendix at 300.

help work with these documents and your new attorney.

I was talking with Mr. White before I realized you involved yourself with another Indiana attorney.

Mr. White is not permitted to communicate with you if you have signed up with other Indiana Counsel. You must make a decision of how to proceed. . . .

*Id.* at 306. Schwartz drafted a letter dated May 5, 2008, to William Kelley of the law firm Craig, Kelley & Faultless in Batesville, Indiana, indicating that "[p]rior to [Kelley's] letter of May 1, 2008, [Schwartz] was not aware that [Kelley's] office was retained," and that Schwartz would forward his documents related to Foley's case to Kelley. *Id.* at 307. Schwartz drafted another letter to Kelley dated May 7, 2008, in which he indicated

that he was sending Foley's "entire file." [4] *Id.* at 308.

On November 7, 2008, Foley filed a complaint against Schwartz and Collins alleging Count I, legal malpractice against Schwartz for failure to preserve her claim against Switzerland County by failing to file a tort claim notice before November 24, 2007 [5] pursuant to Ind.Code § 34–13–3–8; [6] and Count II, negligence against Collins. On January 7, 2009, Schwartz filed his answer and asserted that the trial court lacked personal jurisdiction, among other defenses. On May 26, 2009, Foley filed an amended complaint which named Bastin and David McCarty in addition to Schwartz and Collins. On June 10, 2009, Schwartz filed a motion to dismiss pursuant to Ind. Trial Rule 12(B)(2) and memorandum in support which stated that "Schwartz's contacts with the State of Indiana are insufficient to confer general

---

4. In addition to the letters discussed above, the record reveals that Schwartz drafted eight letters to Foley at her Cincinnati, Ohio address between August 2, 2007 and April 30, 2008. Also, the record contains letters from Iglendza to Schwartz dated December 5, 2007 and December 12, 2007, and letters to Iglendza from Schwartz addressed to State Farm's Bloomington, Illinois address dated December 10, 2007 and February 14, 2008. Finally, the record contains correspondence related to Foley between Schwartz and various persons or entities not located in Indiana as follows: (A) Old Mutual, located in Lincoln, Nebraska, on August 2, August 13, September 10, October 15, and October 23, 2007; (B) Health Alliance in Cincinnati, Ohio on August 29, 2007; (C) SDS in Atlanta, Georgia on September 27, 2007 and January 4, 2008; (D) Jewish Hospital in Cincinnati, Ohio on November 20, 2007; (E) Freiberg Orthopaedics in Cincinnati, Ohio on November 20, 2007; (F) Medical Records Online in King of Prussia, Pennsylvania on December 20, 2007 and January 4, 2008; (G) the Colerain Township Fire Department in Cincinnati, Ohio on December 20, 2007; (H) CJ Critical Care/Statecare in Cleveland, Ohio on January 15, 2008; and (I) The Rawlings Company, LLC in LaGrange, Kentucky on March 3, 2008.

The record also contains a letter from Schwartz dated March 10, 2008, which states: "Confidentially, I will be asking you to try to find the contractor or responsible party that abandoned the pipe shown in the enclosed photograph." *Id.* at 296. However, the name and address of the recipient have been redacted.

5. As noted by the trial court in its order, a tort claim notice would have been due "by November 23, 2007." Appellant's Appendix at 13.

6. Ind.Code § 34–13–3–8 provides in relevant part:

   (a) Except as provided in section 9 of this chapter, a claim against a political subdivision is barred unless notice is filed with:
   (1) the governing body of that political subdivision; and
   (2) the Indiana political subdivision risk management commission created under IC 27–1–29;
   within one hundred eighty (180) days after the loss occurs.

or specific personal jurisdiction." *Id.* at 107. Schwartz's motion contained an attached affidavit of Schwartz which stated in part:

5. The purpose of my representation of Ms. Foley was limited to the recovery of medical payments under Daniel Collins's homeowner's insurance policy[.]

6. On June 14, 2007, I advised Ms. Foley that I was not licensed to practice law in the States of Indiana or Kentucky and, further, that if I believed the case should be best conducted in those two states, I would split any fee with another attorney under the same agreement at no additional charge to her.

7. I do not own any property in Indiana.

8. I do not commercially advertise in Indiana or do business in the State.

9. During my representation of Ms. Foley, I communicated with her in Ohio and gave legal advice to her in Ohio.

10. I do not regularly visit the State of Indiana.

*Id.* at 109–110.

On June 26, 2009, the court held a hearing and entered an order taking Schwartz's motion to dismiss under advisement, among other things.[7] On July 30, 2009, Schwartz filed an answer to Foley's amended complaint. On October 29, 2009, Schwartz was deposed, and he testified that he travelled to Indiana to visit casinos in Vevay about twice a year for the past ten years, and that the drive took "over an hour." *Id.* at 392. He testified that other than that he does not travel to Indiana unless he is "driving through it to go somewhere else." *Id.* at 395. Schwartz also testified that he used "Lexis" to perform legal research on Indiana law. *Id.* at 413.

On December 22, 2009, Foley filed an objection and brief in opposition to Schwartz's motion to dismiss. In addition to the deposition of Schwartz, Foley attached the affidavits of Lana Swingler and John Stroup, among others. Swingler's and Stroup's affidavits related to the case of *"In the Matter of the Estate of Sharon Gilbert, deceased,* filed in the Dearborn Circuit Court, cause number 15C01–0612–ES–39," and alleged that Schwartz did legal work on behalf of Sharon Gilbert's estate in which he had contacts with Indiana between 2004 and 2005. *Id.* at 206. On February 4, 2010, Schwartz filed a reply in support of his motion to dismiss arguing that "most of the alleged 'minimum contacts' cited by Foley are irrelevant to the personal jurisdiction analysis," and that "Schwartz's contacts with Indiana are not so substantial, continuous, and systematic that he should reasonably have anticipated being haled into an Indiana court for any matter." *Id.* at 438, 443.

On April 19, 2010, the court held a hearing on Schwartz's motion to dismiss, and on May 19, 2010, the court entered a final judgment granting the motion.

█ The sole issue is whether the trial court erred in dismissing Foley's complaint on the basis that it did not have personal jurisdiction over Schwartz. "Personal jurisdiction is a question of law...." *LinkAmerica Corp. v. Albert,* 857 N.E.2d 961, 965 (Ind.2006) (quoting *Anthem Ins. Co. v. Tenet Healthcare Corp.,* 730 N.E.2d 1227, 1237 (Ind.2000)). "Because Indiana state trial courts are courts of general jurisdiction, jurisdiction is presumed." *Everdry Mktg. and Mgmt., Inc. v. Carter,* 885 N.E.2d 6, 10 (Ind.Ct.App.2008). "The

---

7. A copy of the trial court's order is not contained in the record.

party contesting jurisdiction bears the burden of proving the lack of personal jurisdiction by a preponderance of the evidence, unless the lack of jurisdiction is apparent on the face of the complaint." *Id.* As with other questions of law, a determination of the existence of personal jurisdiction is entitled to *de novo* review by appellate courts. *LinkAmerica,* 857 N.E.2d at 965. We do not defer to the trial court's legal conclusion as to whether personal jurisdiction exists. *Id.* However, personal jurisdiction turns on facts, typically the contacts of the defendant with the forum, and findings of fact by the trial court are reviewed for clear error. *Id.*

■■ "The Due Process Clause of the Fourteenth Amendment requires that before a state may exercise jurisdiction over a defendant, the defendant must have 'certain minimum contacts with [the state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.' " [8] *Id.* at 967 (quoting *Int'l Shoe Co. v. Wash.,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (internal quotation omitted)). "If the defendant's contacts with the state are so 'continuous and systematic' that the defendant should reasonably anticipate being haled into the courts of that state for any matter, then the defendant is subject to general jurisdiction, even in causes of action unrelated to the defendant's contacts with the forum state." *Id.* (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 415 n. 9, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)).

■ In cases where a defendant is not subject to general jurisdiction in a forum state, "specific jurisdiction may be asserted if the controversy is related to or arises out of the defendant's contacts with the forum state." *Id.* "Specific jurisdiction requires that the defendant purposefully availed itself of the privilege of conducting activities within the forum state so that the defendant reasonably anticipates being haled into court there." *Id.* (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474–475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). Also, "[a] single contact with the forum state may be sufficient to establish specific jurisdiction over a defendant, if it creates a 'substantial connection' with the forum state and the suit is related to that connection." *Id.* (citing *McGee v. Int'l Life Ins. Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957)). "But a defendant cannot be haled into a jurisdiction 'solely as a result of random, fortuitous, or attenuated contacts or of the unilateral activity of another party or a third person.' " *Id.* (quoting *Burger King,* 471 U.S. at 475, 105 S.Ct. 2174 (internal quotation marks omitted) (citing *Helicopteros,* 466 U.S. at 417, 104 S.Ct. 1868; *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984); *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 299, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980))).

■ Once either general or specific jurisdiction has been established, "due process requires that the assertion of personal jurisdiction over the defendant is reasonable." *Id.* However, "[t]he assertion of

---

**8.** We note that the *LinkAmerica* Court held that an amendment to Indiana's long arm statute, Indiana Trial Rule 4.4(A), rendered inapplicable the two-pronged test for personal jurisdiction in *Anthem,* 730 N.E.2d at 1232, stating that "[r]etention of the enumerated acts found in Rule 4.4(A) serves as a handy checklist of activities that usually support personal jurisdiction but does not serve as a limitation on the exercise of personal jurisdiction by a court of this state." 857 N.E.2d at 967. Thus, we "direct our analysis toward the constitutional safeguards found in the Fourteenth Amendment" of the Federal Constitution. *Everdry,* 885 N.E.2d at 12.

personal jurisdiction will rarely be found unreasonable if 'minimum contacts' are found." *Id.* The Court cited to *Burger King* and set forth five factors to balance in determining reasonableness:

> (1) the burden on the defendant; (2) the forum State's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenience and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several States in furthering fundamental substantive social policies.

*Id.* at 968 (citing *Burger King*, 471 U.S. at 476–77, 105 S.Ct. 2174).[9]

■ Foley argues that Indiana has personal jurisdiction over Schwartz under both specific and general jurisdiction analyses. With respect to specific personal jurisdiction, Foley argues that the trial court erred in its application of *Everdry* which states that "[i]n a litigation context, '[f]or purposes of specific jurisdiction, contacts should be judged when the cause of action arose.'" Appellant's Brief at 31 (quoting *Everdry*, 885 N.E.2d at 13 (quoting *Cambridge Literary Props., Ltd. v. W. Goebel Porzellanfabrik G.m.b.H. & Co. Kg.*, 295 F.3d 59, 66 (1st Cir.2002))). The trial court, in applying this statement from *Everdry*, noted that "[t]his rule comports with the Due Process Clause's requirement that individuals have 'fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign.'" Appellant's Appendix at 18 (quoting *Burger King*, 471 U.S. at 472, 105 S.Ct. 2174 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 218, 97 S.Ct. 2569, 2587, 53 L.Ed.2d 683 (1977) (Stevens, J., concur-

ring))). The court continued that "the fair warning that due process requires arises not at the time of the suit, but when the events that gave rise to the suit occurred." *Id.* (citing *Helicopteros*, 466 U.S. at 414 n. 9, 104 S.Ct. 1868). Thus, the court concluded that the "operative date of inquiry" regarding Schwartz's contacts with Indiana should be evaluated as of November 23, 2007, which was "the date that the Tort Claim Notice should have been filed, if at all." *Id.* at 19. The court found that the "only alleged minimum contacts pertinent to the specific jurisdiction inquiry . . . are (1) his general knowledge that the ATV accident occurred in Indiana; and (2) Internet legal research conducted on Indiana Law," and it deemed these contacts insufficient. *Id.*

■ However, we find that the court erred in its determination of when the cause of action arose. Indiana has adopted the "continuous representation doctrine" for legal malpractice actions. *Biomet Inc. v. Barnes & Thornburg*, 791 N.E.2d 760, 767 (Ind.Ct.App.2003), *trans. denied*. This doctrine, which constitutes an exception to the discovery rule governing the statute of limitations, provides that "[i]n a situation where the attorney continues to represent the client in the same matter in which the alleged malpractice occurred, the date of accrual begins at the termination of an attorney's representation of a client in the same matter in which the alleged malpractice occurred." *Id.* As noted in our case law governing legal malpractice, a cause of action is deemed "complete" only after it accrues. *See Basinger v. Sullivan*, 540 N.E.2d 91, 92–93, 92 n. 1 (Ind.Ct.App.1989) (interpreting a former version of Indiana's statute of limitations

---

**9.** Again, "[t]hese considerations come into play only if the defendant has sufficient contacts with the forum state to assert personal jurisdiction." *LinkAmerica*, 857 N.E.2d at 968 (citing *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 116, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987)).

governing legal malpractice).[10] Thus, Schwartz's contacts arising out of his representation of Foley with Indiana up until May 1, 2008, when Schwartz's representation of Foley terminated, must be considered.

One of the primary policy objectives cited in *Biomet* for adopting the continuous representation doctrine applies with equal force in this context because "a client is not required to constantly second-guess the attorney, and in some cases, be forced to obtain other legal opinions regarding the attorney's handling of the case." *Biomet,* 791 N.E.2d at 766. Also, we do not believe that this rule runs afoul of *Burger King*'s requirement that a defendant have a "fair warning that a particular activity may subject [him] to the jurisdiction of a foreign sovereign...." 471 U.S. at 472, 105 S.Ct. at 2182 (quoting *Shaffer,* 433 U.S. at 218, 97 S.Ct. at 2587). The basis of the "fair warning" requirement under the Due Process Clause is to give "a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *Id.* (quoting *World–Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. at 567).

■ Here, Schwartz contracted with Foley to represent her in "all claims arising out of said accident claim or incident," which occurred in Switzerland County, Indiana. Appellant's Appendix at 256. Thus, it was predictable or foreseeable that, if Schwartz committed malpractice in

handling Foley's Indiana claim, he may be haled into an Indiana court on a legal malpractice action.

The record reveals that, in representing Foley, Schwartz made a multitude of contacts and purposefully availed himself of the privilege of conducting activities in Indiana. In separate letters dated February 27, 2008 to Dave Zerbe and Lana Swingler, attorneys practicing in Indiana, Schwartz solicited each of their services and proposed that they receive three-fourths of whatever compensation would be provided, with Schwartz keeping one-fourth.[11] On March 5, 2008, Schwartz sent a letter to Linda Elam in Florence, Indiana, inquiring about whether her company had been the one that had done the work on Collins's property which resulted in the culvert pipe being left on the ground. On March 27, 2008, Schwartz sent another letter to someone else in Florence, Indiana containing $300.00, which was payment for an "investigation." *Id.* at 297.

On March 31, 2008, Schwartz sent a letter to the Highway Department asking for the letter to be directed to its insurer "so that a claim may be made." *Id.* at 298. On April 23, 2008, Schwartz sent another letter to the Highway Department indicating that he had not received a response to his previous letter and asking that the department contact him within five days. Schwartz also sent letters to Stan White on April 29, 2008 and April 30, 2008, discussing a possible lawsuit and proposing that White would take five-sixths of any

---

10. The current statute of limitation governing legal malpractice states that an action "must be commenced within two (2) years after the cause of action accrues." Ind.Code § 34–11–2–4; *see also Biomet,* 791 N.E.2d at 767.

11. Schwartz sent a similar letter to Alan Trenz, an attorney residing in Cincinnati, Ohio but licensed to practice law in Indiana.

Also, Schwartz sent letters to Iglendza on June 14, June 19, and December 10, 2007, and on February 14, 2008 which were scanned and emailed to Iglendza in Indianapolis.

compensation with Schwartz taking one-sixth. In the April 29, 2008 letter, Schwartz indicated that he wished to meet with White in Indianapolis, and in the April 30, 2008 letter, Schwartz indicated that he also had spoken with White about Foley's claim. Schwartz also acknowledged in the April 30, 2008 letter that he had failed to file a tort claim notice with Switzerland County.

Schwartz also phoned Gregory Coy, who was the attorney for Switzerland County and the two spoke about a possible claim Foley had against the County. As part of the conversation, Coy discussed the fact that the County was immune to suit because it had not received notice within 180 days pursuant to Ind.Code § 34–13–3–8 of the Indiana Tort Claims Act.

Based upon these contacts, we find that Schwartz had sufficient minimum contacts with Indiana to confer specific personal jurisdiction.[12] *See Anthem*, 730 N.E.2d at 1236 (noting five "[t]hings to consider when evaluating the defendant's contacts," including: "(1) whether the claim arises from the defendant's forum contacts, (2) the overall contacts of the defendant or its agent with the forum state, (3) the foreseeability of being haled into court in that state, (4) who initiated the contacts, and (5) whether the defendant expected or encouraged contacts with the state"); *see also Liberatore v. Calvino*, 293 A.D.2d 217, 742 N.Y.S.2d 291, 291 (2002) (holding that the court had specific personal jurisdiction over a Rhode Island attorney representing a Rhode Island client involved in an auto accident in New York City and in so holding examined the attorney's contacts occurring after the limitations period had run).

Schwartz brings two federal cases to our attention which he contends demonstrate that he did not have the requisite minimum contacts with Indiana to find specific personal jurisdiction. First, he cites to *Sawtelle v. Farrell*, 70 F.3d 1381, 1386–1387 (1st Cir.1995), which he summarizes as holding that "the defendant was not subject to in personam jurisdiction because an attorney-client relationship without more does not confer jurisdiction." Appellee's Brief at 21. In *Sawtelle*, however, the clients, New Hampshire residents, sued their Virginia- and Florida-based attorneys in a New Hampshire court based

12. At least one commentator has recognized that the United States Supreme Court "has given very little guidance to help the lower courts" in analyzing "the time period during which contacts are relevant to the determination [of] whether the court may exercise personal jurisdiction." Todd David Peterson, *The Timing of Minimum Contacts*, 79 Geo. Wash. L.Rev. 101, 104 (2010). "Some courts hold that the relevant time is the date on which the claim arose, while other courts consider contacts up to the time when the complaint is served on the defendant." *Id.* at 132–133 (footnotes omitted). "The courts that allow consideration of post-claim contacts with the forum state focus on the relevance of these contacts to the claim." *Id.* at 137. The commentator observes:

... [I]f the Supreme Court were to clarify the rationale underlying the minimum contacts requirement, it would be far easier to come up with a coherent set of principles on the timing of minimum contacts. If the minimum contacts requirement is based upon a social contract theory that requires a relationship between the forum state and the defendant before the defendant may be subjected to the jurisdiction of the state's court system, then it would seem appropriate to measure contacts at the time the claim arose.... If the requirement is really an element of interstate federalism, then the date of the complaint seems to be the most relevant time.... Finally, if the minimum contacts requirement is really just a rough proxy for convenience, then the date when a court decides the personal jurisdiction motion is the key time because, if by that time the defendant has sufficient contacts with the forum state to make litigation fair and convenient, then there is no reason for the court not to proceed.

*Id.* at 149–150 (footnotes omitted).

upon an underlying lawsuit that was being handled in the Florida court system. *See Sawtelle*, 70 F.3d at 1385–1386. The only contacts the attorneys had with New Hampshire involved correspondence with the client. *Id.* at 1386. Here, by contrast, an Indiana action was being pursued, and Schwartz contacted multiple attorneys about a fee-splitting arrangement. We therefore do not find *Sawtelle* instructive.

Schwartz also cites to *Kaempe v. Myers*, No. IP 01–0424–C–H/K, 2001 WL 1397291 at *9 (S.D.Ind. Nov. 6, 2001), which he notes held that "in personam jurisdiction did not exist in Indiana over a Washington D.C. patent lawyer who was hired by an Indiana resident to prepare a patent application for an invention." Appellee's Brief at 22. *Kaempe* involved a patent lawyer who resided in Washington, D.C. who was hired by Kaempe and his partner to help file a patent application with the United States Patent and Trademark Office in Washington, D.C. *Kaempe*, 2001 WL 1397291, at *1. The attorney's only contact with Indiana was four or five telephone calls to Kaempe's residence and e-mails to Kaempe at the address "kaempe@kiva.net." *Id.* at *2. We find *Kaempe* distinguishable.

▬ This does not end our inquiry, however. Having determined that Schwartz was subject to Indiana jurisdiction, we must determine whether it is reasonable for him to be haled into an Indiana court. As noted above, the United States Supreme Court has set forth five factors which we must balance in determining reasonableness; however, the Indiana Supreme Court in *LinkAmerica* noted that "[t]he assertion of personal jurisdiction will rarely be found unreasonable if 'minimum contacts' are found." 857 N.E.2d at 967. The five *Burger King* factors, as presented by *LinkAmerica*, to determine reasonableness are: (1) the burden on the defendant;

(2) the forum State's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several States in furthering fundamental substantive social policies.

First, regarding the burden on Schwartz, the trial court stated in its order that "Schwartz is a resident of Ohio, is licensed to practice law in the State of Ohio, and does not generally engage in doing business in Indiana," in finding that a "substantial burden" would be placed on Schwartz. Appellant's Appendix at 22. However, Foley points out that Schwartz testified that he has visited Vevay, Indiana, where the Switzerland County Circuit Court is located, to attend casinos twice, and he has visited casinos in Indiana about twice a year over the past ten years. Schwartz testified that "[i]t took more than an hour" to drive to Vevay and that he was prepared to drive to Indianapolis to visit White. *Id.* at 392. Thus, we conclude that Schwartz would not be significantly burdened were he to stand trial in Indiana.

Second, in examining Indiana's interest in adjudicating the dispute, the court stated that "Indiana has little, if any, interest in adjudicating this dispute, inasmuch as the case involves an Ohio counsel and an Ohio resident." *Id.* at 22. However, we note that the accident occurred in Indiana, and it is a provision of Indiana's Tort Claims Act which brought about the alleged malpractice by Schwartz. Schwartz was soliciting Indiana attorneys to file a suit in Indiana. We find that Indiana has an interest in adjudicating the dispute.

Third, in evaluating Foley's interest in obtaining convenient and effective relief, we note that Foley's action also names Collins and Bastin, and any action against them would be addressed in the Switzer-

land County Circuit Court. Thus, we find that handling an action against Schwartz in the Switzerland County Circuit Court would provide convenience.

Fourth, regarding the interstate judicial system's interest in obtaining the most efficient resolution of controversies, again we note that the accident underlying Foley's legal malpractice claim occurred in Indiana. It was a function of Indiana law which subjected Schwartz to legal malpractice, and his failure to file a notice with Switzerland County on or before November 23, 2007 should be judged based upon Indiana malpractice standards.

Finally, as to the fifth factor, Foley argues that a trial in Indiana would further fundamental social policies because it is important to hold "professionals responsible for their negligence, particularly if they are practicing law in a forum state without a proper license." Appellant's Brief at 39. Schwartz responds that "[t]his argument ... fails to explain why the same policy would not equally—if not, more so—be furthered in an Ohio court" because Foley is an Ohio resident and Schwartz an Ohio attorney. Appellee's Brief at 32. Because Indiana law applies to the issues involved in the accident, however, we agree with Foley that this case is appropriate for an Indiana court.

After balancing all the factors, we conclude that Schwartz has failed to persuade us that it would be unfair and unreasonable for an Indiana court to exercise jurisdiction over him. Overall, we conclude that exercising jurisdiction over Schwartz would not offend notions of fairness and reasonableness. Accordingly, the court erred when it granted Schwartz's motion to dismiss for lack of personal jurisdiction.[13]

For the foregoing reasons, we reverse the trial court's grant of Schwartz's motion to dismiss and remand for further proceedings.

Reversed and remanded.

DARDEN, J., and BRADFORD, J., concur.

13. Because we hold that the trial court had specific personal jurisdiction over Schwartz, we need not address whether Schwartz was subject to general personal jurisdiction.