FILED

Jul 02 2020, 8:37 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEYS FOR APPELLANTS

Adam J. Sedia
Joseph R. Marconi
Michael A. Sarafin
Johnson & Bell, P.C.
Crown Point, Indiana

ATTORNEYS FOR APPELLEE

Andrew M. McNeil
Philip R. Zimmerly
Sarah T. Parks
Bose McKinney & Evans, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Thomas R. Ysursa and
Becker, Hoerner, Thompson &
Ysursa, P.C.,[1]

*Appellants-Defendants,*

v.

Frontier Professional Baseball,
Inc.,

*Appellee-Plaintiff.*

July 2, 2020

Court of Appeals Case No.
20A-CT-49

Interlocutory Appeal from the
Indiana Commercial Court,
Marion Superior Court

The Honorable Heather A. Welch,
Judge

Trial Court Cause No.
49D01-1901-CT-576

**Mathias, Judge.**

---

[1] As discussed *infra*, Kevin L. Murphy, J. Jeffrey Landen, Murphy Landen Jones PLLC, and Kevin L. Murphy PLLC, defendants below, also filed a notice of appeal, but their appeal was dismissed without prejudice prior to briefing. Their petition to transfer regarding the dismissal of their appeal is currently pending. Nathaniel L. Swehla and Graydon Head & Ritchey, PLLC, also defendants below, were dismissed prior to issuance of the appealed order by agreement of the parties.

[1] The Marion Superior Court denied a motion to dismiss filed by Thomas Ysursa ("Ysursa") and the law firm of Becker, Hoerner, Thompson & Ysursa, P.C. (collectively the "Ysursa Defendants") in which the Ysursa Defendants claimed that the trial court lacked personal jurisdiction over them. In this interlocutory appeal, the Ysursa Defendants present two issues for our review: (1) whether the trial court erred in determining that there were sufficient minimum contacts between Ysursa and Indiana to establish personal jurisdiction; and (2) whether the trial court's decision to exercise its jurisdiction was unreasonable. Concluding that the trial court did not err in either respect, we affirm.

## Facts and Procedural History

[2] Frontier Professional Baseball, Inc. ("Frontier") is a nonprofit baseball league incorporated in Ohio. Frontier's principal office is in Sauget, Illinois. Ysursa is an attorney licensed to practice in Illinois and Missouri. He is a partner in the firm of Becker, Hoerner, Thompson & Ysursa, P.C., based in Belleville, Illinois. From 2009 until early 2019, Ysursa acted as general counsel for Frontier.

[3] For several years prior to 2014, Frontier attempted to expand its league to include a team in Kokomo, Indiana. This attempt was ultimately unsuccessful, and the expansion attempt ceased in 2014. In November of that year, two of Frontier's shareholders filed a shareholder derivative action (the "Indiana Derivative Action") in the United States District Court for the Southern District of Indiana, alleging civil conspiracy and breaches of fiduciary duties against Frontier's management regarding the failure of the attempted expansion into

Kokomo. *See Washington Frontier League Baseball, LLC v. Zimmerman*, Case No. 1:14-cv-1862, WL 7300555 (S.D. Ind. Nov. 18, 2015).

[4] Prior to and following the filing of the Indiana Derivative Action, Frontier sought advice from Ysursa regarding the case. Then, on November 17, 2014, Ysursa informed Frontier's Executive Committee that he could not represent the league in the matter as he was a potential witness in the case. Ysursa recommended another attorney, Kevin Murphy, to represent Frontier in the Indiana Derivative Action. Nevertheless, Ysursa continued to perform legal work on the Indiana Derivative Action, billing Frontier for his legal services.

[5] The legal work Ysursa performed included conferring with Murphy regarding the Indiana Derivative Action, exchanging emails with the plaintiffs' counsel regarding waiver of service, and meeting with Frontier's Special Litigation Committee ("SLC") and Murphy's legal team regarding the Indiana Derivative Action. In January 2015, Ysursa directed an associate at his firm to draft a research memo regarding shareholder derivative suits and special litigation committees in relation to the Indiana Derivative Action. Ysursa then circulated this memo to Murphy's legal team. The memo emphasized that certain requirements were necessary before a court could defer to the business judgment of a special litigation committee. Thereafter, Ysursa continued to confer with Murphy and Frontier regarding the Indiana Derivative Action. In

early 2015, Ysursa prepared a report for Frontier's SLC[2] regarding the Indiana Derivative Action. One of the allegations of malpractice asserted by Frontier in the current case is that the Ysursa Defendants failed to properly advise the SLC on the requirement that the committee be independent and conduct an investigation. Frontier also alleges that Ysursa did not properly investigate and research the report.

[6] In 2017, Ysursa signed an affidavit in support of Frontier's motion for summary judgment in the Indiana Derivative Action. Ultimately, the federal court denied Frontier's motion for summary judgment in the Indiana Derivative Action. *See Washington Frontier League Baseball, LLC v. Zimmerman*, 2018 WL 2416419 at *12 (S.D. Ind. May 29, 2018) ("The lack of independence and thorough investigation undermined the integrity of the SLC process and defeated the very purpose for giving an SLC deference. Therefore, the Court concludes that summary judgment is not warranted pursuant to the business judgment rule."). Thereafter, Frontier reached a settlement with two of the plaintiffs in the Indiana Derivative Action.

[7] On January 4, 2019, Frontier filed a legal malpractice action in Marion Superior Court against three sets of defendants: the Ysursa Defendants; Murphy, J. Jeffrey Landen, and their law firm, Murphy Landen Jones, PLLC, and Kevin L. Murphy, PLLC ("the MLJ Defendants"); and Nathaniel L.

---

[2] Ysursa's billing records refer to this report as the "Executive Committee Report" or the "Executive Litigation Committee Report." Appellant's App. pp. 134, 137.

Swehla and his law firm, Graydon Head & Ritchey, PLLC ("GHR"). The allegations against Murphy and Swehla related to their handling of the Indiana Derivative Action. Against Ysursa specifically, the complaint alleged that he improperly vetted Murphy for selection as Frontier's litigation counsel, that he failed to advise Frontier's SLC on the legal requirements of Murphy's strategy, that he failed to investigate the potential value of the claims against Frontier, that he advised Frontier to reject a proposed settlement without a fundamental understanding of the potential value of the claims, and that he failed to investigate insurance coverage for the claim.

[8]     On February 27, 2019, the Ysursa Defendants filed an answer alleging the affirmative defense of lack of personal jurisdiction. And on April 1, 2019, the Ysursa Defendants filed a motion to dismiss under Indiana Trial Rule 12(B)(2), again alleging a lack of personal jurisdiction. Swehla and GHR also filed a motion to dismiss, and the MLJ Defendants filed a motion for summary judgment. The parties subsequently agreed to dismiss Swehla and GHR as defendants.

[9]     On August 5, 2019, the trial court issued an order denying the Ysursa Defendants' motion to dismiss and the MLJ Defendants' motion for summary judgment. On August 21, 2019, the Ysursa Defendants filed a motion asking the trial court to certify its order for interlocutory appeal. The MLJ Defendants filed a similar motion on September 5, 2019. The trial court held a hearing on these motions on November 13, 2019. On December 12, 2019, the trial court granted the Ysursa Defendants' motion to certify its order for interlocutory

appeal. The trial court denied the MLJ Defendants' motion to certify the following day. This court accepted jurisdiction of the interlocutory appeal on February 3, 2020, and this appeal ensued.[3]

## Standard of Review

Jurisdictional challenges require courts to address a "threshold question concerning the court's power to act." *Boyer v. Smith*, 42 N.E.3d 505, 508 (Ind. 2015) (citing *Perry v. Stitzer Buick GMC, Inc.*, 637 N.E.2d 1282, 1286 (Ind. 1994)). The trial court has the power to "weigh the evidence to determine the existence of the requisite jurisdictional facts," and to make findings to resolve factual disputes. *Id.*

Our standard of review for a motion to dismiss for lack of personal jurisdiction under Trial Rule 12(B)(2) is well settled. "Personal jurisdiction presents a question of law we review de novo." *Id.* (citing *LinkAmerica Corp. v. Cox*, 857 N.E.2d 961, 965 (Ind. 2006)). Whether personal jurisdiction exists can depend upon factual determinations concerning a defendant's contacts with the forum state, in which case the challenger bears the burden of disproving personal jurisdiction. *Id.* (citing *Wolf's Marine, Inc. v. Brar*, 3 N.E.3d 12, 15 (Ind. Ct. App. 2014)). Accordingly, when the trial court issues findings of jurisdictional facts, we review those findings for clear error. *Id.* at 509. (citing *LinkAmerica*, 857

---

[3] The MLJ Defendants filed a separate notice of appeal on February 10, 2020, claiming that they were appealing the trial court's August 5, 2019 order denying their motion for summary judgment. We issued an order on March 9, 2020 dismissing the MLJ Defendant's appeal without prejudice. On April 17, 2020, the MLJ Defendants filed a petition to transfer with our supreme court, claiming that we improperly dismissed their appeal. As of the date of this opinion, our supreme court has not yet ruled on this petition to transfer.

N.E.2d at 965). In reviewing findings for clear error, we consider whether the evidence supports the findings and whether the findings support the judgment. *Id.* We will reverse the trial court's factual findings only when the record contains no evidence to support them either directly or indirectly. *Id.* (citing *Fischer v. Heymann*, 12 N.E.3d 867, 870 (Ind. 2014)).

## Personal Jurisdiction

[12] The term "personal jurisdiction" refers to a court's power to impose judgment on a particular defendant. *Boyer*, 42 N.E.3d at 509. Indiana Trial Rule 4.4(A) sets forth a list of activities that support a finding of personal jurisdiction. *See Boyer*, 42 N.E.3d at 509. Trial Rule 4.4(A) also provides that "a court of this state may exercise jurisdiction on any basis not inconsistent with the Constitutions of this state or the United States." Our supreme court has interpreted "this catchall 'any basis' provision to 'reduce analysis of personal jurisdiction to the issue of whether the exercise of personal jurisdiction is consistent with the federal Due Process Clause.'" *Id.* (quoting *LinkAmerica*, 857 N.E.2d at 967.

[13] Accordingly, "before an Indiana court can properly assert personal jurisdiction over a defendant, the Due Process Clause of the Fourteenth Amendment mandates that the defendant have 'certain minimum contacts with the state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Id.* (citing *Int'l Shoe Co. v. Washington Off. of Unemployment Compensation and Placement*, 326 U.S. 310, 316 (1945)). Such

"[m]inimum contacts include acts defendants themselves initiate within or without the forum state that create a substantial connection with the forum state itself." *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

In *Walden v. Fiore*, 571 U.S. 277 (2014), the United States Supreme Court provided guidance for determining whether such minimum contacts exist for specific personal jurisdiction.[4] The *Walden* Court stressed that the question of whether a forum state "may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." *Id.* at 283–84 (citations and internal quotation marks omitted). For a forum state's exercise of jurisdiction to comport with due process, "the defendant's suit-related conduct must create a substantial connection with the forum State." *Id.* at 284. This relationship must arise out of contacts that the defendant himself creates with the forum state, not the defendant's contacts with persons who reside there. *Id.* The *Walden* Court further explained that

> the plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him. *To be sure, a defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties. But a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction.* Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State,

---

[4] In contrast, general personal jurisdiction "arises when defendants possess 'continuous and systematic' contacts with Indiana that would put [defendants] on notice they could be sued in our courts on any cause of action, even one unrelated to its contacts here." *Boyer*, 42 N.E.3d at 510 n.2 (quoting *LinkAmerica*, 857 N.E.2d at 967). Neither party argues that general personal jurisdiction is applicable in this case.

not based on the random, fortuitous, or attenuated contacts he
makes by interacting with other persons affiliated with the State.

*Id.* at 285–86 (emphasis added) (citations omitted).

# Discussion and Decision

The Ysursa Defendants claim that Ysursa's only contact to Indiana was with regard to the Indiana Derivative Action, which involved Frontier. None of these contacts, they argue, were purposeful or direct, and the contacts related only to Ysursa's role as a witness and as Frontier's general counsel, a position he had held for years prior to the Indiana Derivative Action. Under these facts and circumstances, the Ysursa Defendants claim that the trial court erred in concluding that Ysursa had sufficient minimum contacts with Indiana to give an Indiana court personal jurisdiction over him.

In support of their argument, the Ysursa Defendants rely on the opinion of our supreme court in *Boyer*, *supra*. In that case, a former employee, Ernest, sought to bring an employment discrimination claim against his former employers, Boyer and Smith, who had failed to hire him in their new business venture. Ernest first filed a pro se discrimination claim with the Cincinnati office of the Equal Employment Opportunity Commission ("EEOC"). The EEOC's Cincinnati office then transferred the case to its Indianapolis office. Ernest hired Cassidy, an attorney licensed in Kentucky, to represent him in the employment discrimination action. Cassidy filed such an action in federal district court in Kentucky, naming Boyer, Smith, and the two corporations they formed.

Cassidy later dismissed Boyer and Smith from the suit, and the federal district court entered summary judgment in favor of the corporations.

[17] Boyer and Smith then filed suit against Cassidy in Indiana state court for malicious prosecution, abuse of process, constructive fraud, and intentional infliction of emotional distress. The trial court determined that it lacked personal jurisdiction over Cassidy, and Boyer and Smith appealed. On transfer to our supreme court, the court affirmed the trial court's determination. *Boyer*, 42 N.E.3d at 507.

[18] In determining that Cassidy's contacts with Indiana were insufficient to establish personal jurisdiction, the court noted that her contacts were only with the plaintiffs and that she neither created nor invoked those contacts herself. *Id.* at 511. Specifically, Cassidy never practiced law in Indiana, nor did she ever seek to; she did not seek business from Indiana; she communicated with the Indianapolis EEOC only because the Cincinnati office transferred the case there; she attended a deposition in Indiana only because Boyer and Smith's attorney scheduled it there; and she corresponded with an Indiana attorney and served documents in the state only because the federal rules of civil procedure required her to do so to represent Ernest in the federal case in Kentucky. *Id.* at 511–512. The *Boyer* court therefore stated that "if we took away Cassidy's relationship with Boyer, Richard, and Ernest, she would have absolutely no relevant contacts within Indiana." *Id.* at 512. Her conduct related to the lawsuit created no connection with Indiana other than that a plaintiff resided here. *Id.* Her connection to Indiana resulted from the actions of others, and "plaintiffs'

or third parties' actions cannot serve as the only link between a defendant and a forum state." *Id.* (citing *Walden*, 571 U.S. at 284). The court therefore concluded that "Cassidy herself neither created nor invoked sufficient minimum contacts within Indiana to warrant specific personal jurisdiction in this case." *Id.*

[19] The Ysursa Defendants claim that *Boyer* is directly on point with the present case. We disagree. In *Boyer*, the attorney's connections to Indiana were the result of the actions of others. In contrast, Ysursa knew that the Indiana Derivative Action was filed against his client, Frontier, in Indiana regarding the failure of Frontier's expansion effort into an Indiana city. Even though Ysursa secured other counsel to represent Frontier in the matter, he continued to perform significant legal work on the case, including working on the SLC report regarding the case and signing an affidavit in support of Frontier's unsuccessful motion for summary judgment. Unlike Cassidy, whose "suit-related conduct" consisted wholly of actions taken while representing a client in Kentucky where a plaintiff to the suit resided in our state, Ysursa engaged in conduct directly related to the underlying derivative suit involving his client's activities in Indiana. Ysursa's contacts with Indiana were based not on the "random, fortuitous, or attenuated contacts" he made by interacting with another person affiliated with Indiana, but on his own affirmative conduct in the Indiana Derivative Action.

[20] We find the present case more similar to *Brockman v. Kravic*, 779 N.E.2d 1250, 1258–59 (Ind. Ct. App. 2002). In that case, Kravic was a psychologist licensed

in Kentucky who counseled Brockman's son, A.B., at the request of the child's mother, Guerrero. A.B. was the subject of a custody dispute between the parents, both of whom lived in Indiana. When Guerrero filed a petition for change of custody in the Indiana court, she asked the court to order Kravic to perform a psychological evaluation of A.B. Thereafter, Kravic wrote a letter to Guerrero's attorney stating that he believed Brockman's visitation should be halted. The trial court then suspended the visitations until it could interview the child. After the interview, the court ordered Brockman to attend counseling with Kravic. Brockman complied. Kravic then wrote two more letters in which he recommended that Guerrero have full custody of A.B. and that Brockman's visitation be "therapeutic[.]" *Id*. at 1254.

[21] Brockman subsequently filed a complaint against Kravic in Indiana alleging slander, libel, defamation, interference with a parental relationship, and intentional infliction of emotional distress. Kravic filed a motion to dismiss for lack of personal jurisdiction, which the trial court granted. On appeal, we reversed the trial court's dismissal. We noted that Kravic was contacted by an Indiana resident to counsel her son, also an Indiana resident. Although this counseling took place in Kentucky, Kravic issued a report to an Indiana resident, thus "publishing" the allegedly defamatory material in Indiana. Kravic also agreed to counsel Brockman at the request of an Indiana trial court. He also wrote two letters giving his opinion regarding the custody dispute. Based on these facts, we concluded that, although Kravic did not initiate the contact with Guerrero, he did have "purposeful contact with Indiana when he mailed

the letters there and voluntarily inserted himself into legal proceedings being conducted in Indiana by an Indiana court." *Id*. at 1258–59. By offering his opinion under such circumstances, "Kravic should have expected that it might be possible that he would be haled into Indiana court." *Id*. at 1259. Under these circumstances, we held that Kravic had sufficient minimum contacts to confer the Indiana trial court with specific personal jurisdiction over him. *Id*.

[22] We find the present case similar to *Brockman*. Ysursa performed legal work for Frontier, which had substantial activities in Indiana and which, as a result, had been sued in federal court in Indiana regarding those activities. Ysursa authored the SLC report regarding the Indiana Derivative Action. He also signed an affidavit to be used in the Indiana Derivative Action. Thus, as did the psychologist in *Brockman*, he voluntarily inserted himself into legal proceedings being conducted in Indiana, albeit by a federal court instead of a state court. By performing legal work on, and inserting himself into, the Indiana Derivative Action, Ysursa "should have expected that it might be possible that he would be haled into Indiana court." *Id*. at 1259.

[23] We find further support for our holding in *Foley v. Schwartz,* 943 N.E.2d 371 (Ind. Ct. App. 2011)*, trans. denied,* another case involving a malpractice suit filed in Indiana against an out-of-state attorney. In that case, Foley was an Ohio resident who was injured when he struck an old culvert pipe while riding a four-wheeler on property in Indiana. The owner of the property knew of the location of the pipe but failed to warn Foley despite the fact that grass had grown around it, blocking it from view. Foley retained the services of Schwartz, an attorney

licensed to practice law in Ohio but not Indiana. Schwartz then made numerous contacts with Indiana attorneys, soliciting their services and proposing fee-sharing arrangements with them. Schwartz also sent a letter to the county highway department, asking that the letter be sent to its insurer so that a claim could be made, and later sent another letter when the department did not timely respond. Schwartz also asked to meet with one of the Indiana attorneys to discuss Foley's case and indicated that he had spoken with this attorney about the case. He telephoned the attorney for the Indiana county in which the accident occurred and discussed a possible claim against the county, a conversation that included discussion of the requirements of the Indiana Tort Claims Act. Foley later filed a complaint in Indiana against Schwartz alleging legal malpractice for his failure to preserve her legal claim against the county by not filing the required tort claims notice. Schwartz claimed in his answer that the trial court lacked personal jurisdiction over him and later filed a motion to dismiss for lack of personal jurisdiction, which the trial court granted.

[24]     On appeal, we reversed the trial court. We observed that, in representing Foley, "Schwartz made a multitude of contacts and purposefully availed himself of the privilege of conducting activities in Indiana." *Foley*, 943 N.E.2d at 381. After detailing the number of contacts Schwartz had with people and organizations in Indiana while representing Foley in an accident that occurred in Indiana, we held that "Schwartz had sufficient minimum contacts with Indiana to confer specific personal jurisdiction." *Id*. at 382 (footnote omitted).

[25] Our holding in *Foley* demonstrates that an Indiana court can have personal jurisdiction over an attorney who never travels to Indiana if that attorney purposefully avails himself of the privilege of conducting activities in Indiana that later give rise to the claim of malpractice. And here, Ysursa purposefully availed himself of the privilege of conducting activities in Indiana by continually billing Frontier for legal work performed on the Indiana Derivative Action, by drafting the SLC report regarding the Indiana Derivative Action, and by filing an affidavit in support of Frontier's motion for summary judgment in the Indiana Derivative Action.

[26] We find unavailing Ysursa's citation to *Walden* and its progeny. In *Walden*, a Nevada couple were returning home from Puerto Rico through Atlanta when a federal DEA agent searched them and seized $97,000 in cash that the couple had earned gambling in San Juan. The agent swore out an affidavit in support of forfeiture of the cash. The Nevada residents then filed a claim against the agent in federal court in Nevada. The Nevada District Court dismissed the suit, concluding that the Georgia search and seizure did not establish a basis to exercise personal jurisdiction over the agent in Nevada. The Ninth Circuit reversed, holding that the District Court could properly exercise jurisdiction because the agent had submitted the false probable cause affidavit with the knowledge that it would affect persons with significant Nevada connections.

[27] The United States Supreme Court granted certiorari and affirmed the District Court, noting that the search and seizure occurred in Georgia and that the DEA agent had no contact or connection with Nevada. *Walden*, 571 U.S. at 288–89.

The "injury" to the plaintiffs, i.e., that they could not use the seized funds in Nevada, was insufficient to establish the agent's minimum contacts to the state. *Id.* at 290. The fact that a Nevada attorney contacted the defendant agent or that the funds originated and were returned to Nevada were insufficient minimum contacts. *Id.*

[28] The Georgia-based DEA agent in *Walden* stands in stark contrast to Ysursa here. The DEA agent merely searched and seized money belonging to Nevada residents who were in Georgia. Other than the fact that the owners of the money he seized lived in Nevada, the agent had no contact with Nevada. Ysursa, however, intentionally inserted himself into an Indiana-based lawsuit.

[29] The Ysursa Defendants contend that, without Frontier, Ysursa had no contact with Indiana, and that it is well-settled that the plaintiff cannot be the only link between the defendant and the forum state. *See Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 802 (7th Cir. 2014) ("after Walden there can be no doubt that 'the plaintiff cannot be the only link between the defendant and the forum. Any decision that implies otherwise can no longer be considered authoritative.'") (quoting *Walden*, 571 U.S. at 286). But it is not merely Ysursa's relationship with Frontier that connects him to Indiana, but his active participation in an Indiana-based lawsuit about a failed Indiana endeavor.

[30] The Ysursa Defendants also cite *John Crane, Inc. v. Shein Law Center, Ltd.*, 891 F.3d 692 (7th Cir. 2018). In that case, the defendant law firms' only contact

with Illinois was in serving discovery on an Illinois-based company in the course of representing clients in litigation against that company. The suits, however, were filed in courts in California, Pennsylvania, and Texas, and not in Illinois. The United States Court of Appeals for the Seventh Circuit held that the firms' contacts with Illinois were incidental to the litigation and insufficient to establish the minimum contacts required for personal jurisdiction. *Id.* at 696. The present case is readily distinguishable. Ysursa's contacts with Indiana were not merely incidental to out-of-state litigation; instead, unlike the firms in *John Crane*, he directly involved himself with proceedings in an Indiana court by providing legal advice, drafting a legal memorandum, and filing an affidavit in the Indiana-based litigation, conduct for which the Ysursa Defendants are now facing malpractice claims.

[31] The Ysursa Defendants also rely on *Professional Billing, Inc. v. Zotec Partners, LLC*, 99 N.E.3d 657 (Ind. Ct. App. 2018). In that case, Hulsey acted as CEO for Zotec, a medical billing firm located in Indiana. Hulsey signed a non-compete agreement as part of his employment contract. In February 2014, Hulsey resigned from Zotec. Over two years later, he began to work for Professional Billing, Inc. ("PBI") as CEO and purchased an ownership stake in the company. PBI was a medical billing firm located in Alabama with no customers, offices, or employees in Indiana, nor any other contracts with anyone in Indiana. Zotec later filed suit against Hulsey and PBI, and PBI filed a motion to dismiss for lack of personal jurisdiction. The trial court denied the motion, and PBI appealed.

[32]     On appeal, we reversed the trial court. We noted that PBI had never had or solicited customers in Indiana, owned or leased offices or real estate in Indiana, employed anyone in Indiana, entered into contracts with anyone in Indiana, or registered to do business in Indiana; PBI also had no communication with Hulsey while he was employed by Zotec, and it was not until May 2016 that PBI initiated conversations with Hulsey about joining PBI. *Id.* at 662. Thus, PBI did not "purposely avail itself of the trial court's jurisdiction." Yet again, this is in contrast to Ysursa, who intentionally involved himself in the Indiana-based litigation regarding his client's failed expansion effort into Indiana.

[33]     For all of these reasons, we agree with the trial court that Ysursa had sufficient minimum contacts with Indiana such that the maintenance of the malpractice claim does not offend traditional notions of fair play and substantial justice. *See Schneider v. Hardesty*, 669 F.3d 693, 702–03 (6th Cir. 2012) (holding that federal court in Ohio had personal jurisdiction over Utah attorney in a fraud action against the attorney because he had purposefully availed himself of the benefits and burdens of Ohio by drafting misleading letters to his client's investors regarding the status of their funds, knowing the letters would be sent to investors in Ohio).

# Reasonableness

[34] Even if a defendant has sufficient minimum contacts with the forum state to establish personal jurisdiction, we must still determine whether it is reasonable for a defendant to be haled before an Indiana court.[5] As we explained in *Foley*:

> [T]he United States Supreme Court has set forth five factors which we must balance in determining reasonableness . . . . The five [] factors, as presented by *LinkAmerica*, to determine reasonableness are: (1) the burden on the defendant; (2) the forum State's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several States in furthering fundamental substantive social policies.

943 N.E.2d at 383 (citations omitted). However, our supreme court has held that "'[t]he assertion of personal jurisdiction will rarely be found unreasonable if "minimum contacts" are found.'" *Id.* (quoting *LinkAmerica,* 857 N.E.2d at 967).

[35] Considering these factors in light of our determination that sufficient minimum contacts link the Ysursa Defendants to Indiana, we conclude that it is

---

[5] Frontier argues that the Ysursa Defendants waived any argument regarding the reasonableness of exercising jurisdiction because they did not present any such argument to the trial court. It is well settled that "an appellant may not present an argument that was not presented to the trial court[.]" *Ind. Bureau of Motor Vehicles v. Gurtner*, 27 N.E.3d 306, 312 (Ind. Ct. App. 2015). The Ysursa Defendants admit that they did not present any reasonableness argument to the trial court but contend that we should still consider their appellate claim because the trial court itself appears to have addressed the reasonableness of exercising jurisdiction. Because we prefer to address claims on their merits when possible, we decline to hold that Frontier waived this argument.

reasonable to permit the claim against the Ysursa Defendants to proceed in Indiana courts. The practical burden on the defendants is not unreasonable. The Ysursa Defendants are based in neighbor state Illinois. The present case was filed in Marion County, Indiana, which is approximately 240 miles away from Belleville, Illinois, not an extreme distance. Moreover, even if this burden factor did weigh against allowing the case to proceed in Indiana, the remaining factors weigh in favor of allowing the case to proceed. Indiana certainly has an interest in adjudicating claims of malpractice that occurred during an Indiana-based lawsuit. And, as the trial court noted, if the plaintiffs were required to bifurcate their claims, it would be a burden to all parties to conduct two trials in two different fora. Indeed, "Plaintiff would have to coordinate its case between two separate jurisdictions, while Defendants would have to coordinate any joint defenses in the separate jurisdictions that they may employ during this matter." Appellant's App. p. 33. Under these facts and circumstances, the trial court did not err by concluding that exercising personal jurisdiction over the Ysursa Defendants is reasonable.

## Conclusion

[36] Because Ysursa actively participated in the Indiana Derivative Action, he had the necessary minimum contacts with Indiana for the trial court to exercise specific personal jurisdiction over him. And under the facts and circumstances of this case, the trial court's exercise of personal jurisdiction over Ysursa is not unreasonable. We therefore affirm the judgment of the trial court.

Affirmed.

Riley, J., and Tavitas, J., concur.