ATTORNEYS FOR APPELLANT
Jan M. Carroll
Asina C. Gant
Indianapolis, Indiana

ATTORNEY FOR APPELLEES
John Thrasher
Indianapolis, Indiana

# In the
# Indiana Supreme Court

No. 49S04-0603-CV-88

LINKAMERICA CORPORATION,

*Appellant (Petitioner below),*

v.

WILLIAM ALBERT AND CONNIE J. COX,

*Appellees (Respondents below).*

Appeal from the Marion Superior Court, No. 49D03-0203-PL-000445
The Honorable Patrick McCarty, Judge

On Petition To Transfer from the Indiana Court of Appeals, No. 49A04-0411-CV-601

**December 5, 2006**

**Boehm, J.**

We hold that the 2003 amendment to Indiana Trial Rule 4.4(A) eliminated the need for a two-step process to evaluate personal jurisdiction over a party. We also hold that actions of a subsidiary corporation do not ordinarily establish personal jurisdiction over its parent and find that principle controlling in this case.

**Facts and Procedural History**

Hi-Cube Express, Inc. is an interstate carrier. It is an Oklahoma corporation with its principal place of business in Oklahoma. Until 2004, Hi-Cube was admitted to do business in Indiana and maintained a place of business in Indianapolis. It conducts its business, at least in part, by contracting with "owner-operators" who own and drive trucks bearing Hi-Cube's identification.

In 2001, William Cox, an Indiana resident, entered into a written contract to buy a semi-tractor from Hi-Cube. Cox concurrently entered into a lease of the truck back to Hi-Cube and an operating agreement requiring Cox to operate the vehicle as a Hi-Cube trucker under Hi-Cube's authority from the United States Department of Transportation. The terms of the purchase contract required Cox to operate the truck pursuant to the lease and operating agreement until all payments were made under the purchase agreement. In 2002, Hi-Cube terminated the lease and operating agreement and subsequently repossessed the truck, contending the termination of the operating agreement rendered Cox in default of the requirement in the purchase agreement that Cox operate as a Hi-Cube carrier.

In 2002, Cox and his wife sued Hi-Cube in Marion Superior Court, claiming breach of contract, personal injury, theft, and loss of consortium. In 2003, the trial court granted partial summary judgment to the Coxes, finding liability on the breach of contract and theft counts, but leaving the issue of damages for trial. Two weeks later, the Coxes sought and were granted leave to file a third amended complaint, which added LinkAmerica Corporation as a defendant. LinkAmerica is an Oklahoma corporation with its principal place of business in Oklahoma. It is Hi-Cube's ultimate parent.[1]

LinkAmerica removed the case from the Marion Superior Court to the United States District Court for the Southern District of Indiana. While the case was before the district court, LinkAmerica moved to dismiss as to it for lack of personal jurisdiction. The Coxes responded with a motion to remand the case to the Marion Superior Court, contending that the case did not

---

[1] Hi-Cube is a wholly owned subsidiary of Dannie Gilder, Inc., which is a wholly owned subsidiary of LinkAmerica.

meet the jurisdictional amount for federal diversity jurisdiction. Without addressing personal jurisdiction, the district court found the removal untimely and remanded the case to the Marion Superior Court. On remand, the Marion Superior Court denied LinkAmerica's motion to dismiss for lack of personal jurisdiction but certified its order for interlocutory appeal. The Court of Appeals affirmed the denial of LinkAmerica's motion to dismiss for lack of personal jurisdiction. LinkAmerica Corp. v. Cox, 828 N.E.2d 388 (Ind. Ct. App. 2005). We granted transfer. 855 N.E.2d 1001 (Ind. 2006).

## Standard of Review

"Personal jurisdiction is a question of law . . . ." Anthem Ins. Co. v. Tenet Healthcare Corp., 730 N.E.2d 1227, 1237 (Ind. 2000). As with other questions of law, a determination of the existence of personal jurisdiction is entitled to de novo review by appellate courts. Id. We do not defer to the trial court's legal conclusion as to whether personal jurisdiction exists. Id. However, personal jurisdiction turns on facts, typically the contacts of the defendant with the forum, and findings of fact by the trial court are reviewed for clear error. Id. at 1238.

## I. The Reach of Indiana's Long-Arm Provision

Indiana has no statutory provision governing the permissible exercise of personal jurisdiction. The subject is addressed in Trial Rule 4.4(A), which serves as Indiana's long-arm provision. In 2000, this Court spelled out the test for personal jurisdiction under the Rule as it read at the time: "First, the court must determine if the defendant's contacts with the forum state fall under [Indiana Trial Rule 4.4(A)]. Second, if they do, the court must then determine whether the defendant's contacts satisfy federal due process analysis." Anthem, 730 N.E.2d at 1232 (footnote omitted). Anthem determined that it was error to evaluate personal jurisdiction by addressing only whether the exercise of personal jurisdiction over a defendant comports with the Due Process Clause of the Fourteenth Amendment of the Federal Constitution. Anthem held that "enumerated act" jurisdiction provisions, such as Indiana's 2003 version of Trial Rule 4.4(A), require a two-step analysis. Because Trial Rule 4.4(A) at the time lacked any general language permitting personal jurisdiction on "any constitutional basis," Indiana's long-arm statute was not

3

"coextensive with the limits of personal jurisdiction under the [Federal] Due Process Clause."
Id.

LinkAmerica contends that the subsequent amendment to Trial Rule 4.4(A) eliminated the need for the two-pronged personal jurisdiction test set forth in Anthem. At the time Anthem was decided, Trial Rule 4.4(A) listed eight activities that supported personal jurisdiction over a nonresident ("doing business," "causing personal injury," etc.).[2] Effective January 1, 2003, the following language was added to the end of subsection (A):

> "In addition, a court of this state may exercise jurisdiction on any basis not inconsistent with the Constitutions of this state or the United States."

Two federal courts have concluded that the 2003 addition to Indiana Trial Rule 4.4(A) expanded personal jurisdiction to the full extent permitted by the Due Process Clause and elimi-

---

[2] The Rule provided in entirety:

(A) Acts Serving as a Basis for Jurisdiction. Any person or organization that is a nonresident of this state, a resident of this state who has left the state, or a person whose residence is unknown, submits to the jurisdiction of the courts of this state as to any action arising from the following acts committed by him or her or his or her agent:

(1) doing any business in this state;
(2) causing personal injury or property damage by an act or omission done within this state;
(3) causing personal injury or property damage in this state by an occurrence, act or omission done outside this state if he regularly does or solicits business or engages in any other persistent course of conduct, or derives substantial revenue or benefit from goods, materials, or services used, consumed, or rendered in this state;
(4) having supplied or contracted to supply services rendered or to be rendered or goods or materials furnished or to be furnished in this state;
(5) owning, using, or possessing any real property or an interest in real property within this state;
(6) contracting to insure or act as surety for or on behalf of any person, property or risk located within this state at the time the contract was made;
(7) living in the marital relationship within the state notwithstanding subsequent departure from the state, as to all obligations for alimony, custody, child support, or property settlement, if the other party to the marital relationship continues to reside in the state; or
(8) abusing, harassing, or disturbing the peace of, or violating a protective or restraining order for the protection of, any person within the state by an act or omission done in this state, or outside this state if the act or omission is part of a continuing course of conduct having an effect in this state.

T.R. 4.4(A).

nated any need to identify a specific jurisdictional basis from the list set out in the rule. In re Methyl Tertiary Butyl Ether Prods. Liab. Litig., No. 1:00-1898, MDL 1358 (SAS), M21-88, 2005 U.S. Dist. LEXIS 753, at *57 (S.D.N.Y. Jan. 18, 2005); Litmer v. PDQUSA.com, 326 F. Supp. 2d 952, 955 (N.D. Ind. 2004). The Court of Appeals agreed that the 2003 amendment to Trial Rule 4.4(A) "calls into question the continuing viability of the two-part test in Indiana because the Indiana long-arm statute seemingly now contains what the Anthem court referred to as 'any constitutional basis' language." LinkAmerica, 828 N.E.2d at 392 n.2. The Court of Appeals also observed that another recent panel of that court had concluded that the two-pronged test survived, reasoning that "if Indiana's long-arm statute was intended to be coextensive with the limits of personal jurisdiction under the Due Process Clause, the enumerated acts listed in [Trial] Rule 4.4(A) could have been deleted and the Rule could have been rewritten with general language . . . ." Pozzo Truck Ctr., Inc. v. Crown Beds, Inc., 816 N.E.2d 966, 969 n.2 (Ind. Ct. App. 2004).[3] The Court of Appeals then left resolution of this issue "for another day" and evaluated LinkAmerica's personal jurisdiction claim under the Anthem test after stating that it would have reached the same result under a single due process inquiry. LinkAmerica, 828 N.E.2d at 392 n.2.

The Court of Appeals was correct in noting, as Pozzo pointed out, that a catchall permitting the exercise of jurisdiction on "any constitutional basis" logically embraces and renders unnecessary any laundry list of specific acts. However, as In re Methyl observed, several other states with "enumerated acts" long-arm statutes have expanded the reach of their long-arm provisions without deleting the list of specified acts. 2005 U.S. Dist. LEXIS at *58-*59 (noting that "[i]n recent years, Alabama, Alaska, Nebraska, Oregon, and Tennessee have amended their statutes in this manner without deleting the enumerated sections of the acts"). In re Methyl concluded, correctly, that Indiana's long-arm provision "now extends to the limits of the Constitution." Id. at *59. The 2003 amendment to Indiana Trial Rule 4.4(A) was intended to, and does, reduce analysis of personal jurisdiction to the issue of whether the exercise of personal jurisdiction is consistent with the Federal Due Process Clause. Retention of the enumerated acts found

---

[3] The Court of Appeals also pointed to the decision of this Court in In re Paternity of A.B., 813 N.E.2d 1173, 1176 (Ind. 2004), which noted the trial court's use of the two-part test and termed it "correct." The complaint in In re Paternity of A.B. was filed in 2002. 813 N.E.2d at 1174 n.1. The 2003 amendment was not yet effective, and our decision in In re Paternity of A.B. sheds no light on the effect of the amendment.

in Rule 4.4(A) serves as a handy checklist of activities that usually support personal jurisdiction but does not serve as a limitation on the exercise of personal jurisdiction by a court of this state.

## II. Jurisdiction over a Parent Corporation

The Due Process Clause of the Fourteenth Amendment requires that before a state may exercise jurisdiction over a defendant, the defendant must have "certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Wash., 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). If the defendant's contacts with the state are so "continuous and systematic" that the defendant should reasonably anticipate being haled into the courts of that state for any matter, then the defendant is subject to general jurisdiction, even in causes of action unrelated to the defendant's contacts with the forum state. See Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 415 n.9 (1984).

If the defendant's contacts with the forum state are not "continuous and systematic," specific jurisdiction may be asserted if the controversy is related to or arises out of the defendant's contacts with the forum state. Id. at 414 & n.8. Specific jurisdiction requires that the defendant purposefully availed itself of the privilege of conducting activities within the forum state so that the defendant reasonably anticipates being haled into court there. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474-75 (1985). A single contact with the forum state may be sufficient to establish specific jurisdiction over a defendant, if it creates a "substantial connection" with the forum state and the suit is related to that connection. McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223 (1957). But a defendant cannot be haled into a jurisdiction "solely as a result of random, fortuitous, or attenuated contacts or of the unilateral activity of another party or a third person." Burger King, 471 U.S. at 475 (internal quotation marks omitted) (citing Helicopteros, 466 U.S. at 417; Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774 (1984); World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 299 (1980)).

Finally, if the defendant has contacts with the forum state sufficient for general or specific jurisdiction, due process requires that the assertion of personal jurisdiction over the defendant is reasonable. Id. at 477. The assertion of personal jurisdiction will rarely be found unrea-

sonable if "minimum contacts" are found. Reasonableness of exercising jurisdiction over a defendant is determined by balancing five factors:

> (1) the burden on the defendant; (2) the forum State's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenience and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several States in furthering fundamental substantive social policies.

Id. at 476-77. These considerations come into play only if the defendant has sufficient contacts with the forum state to assert personal jurisdiction. Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 116 (1987).

The plaintiff here is an Indiana resident, and the transaction occurred in Indiana. There is no question that Hi-Cube was subject to personal jurisdiction in Indiana. It was a foreign corporation qualified to do business in this state and maintained a regular place of business in Indiana. The Coxes contend that LinkAmerica, Hi-Cube's ultimate parent, is also subject to suit in Indiana. There is no claim here that LinkAmerica has taken any action in Indiana, had any contacts with the state, or had any contacts with the plaintiff. Rather, the plaintiffs rely solely on Link-America's acts as the parent of its wholly owned subsidiary to establish jurisdiction in Indiana. The issue, therefore, is simply whether LinkAmerica's conduct as a parent of Hi-Cube meets the "minimum contacts" test of International Shoe and its progeny.

We start with the presumption that a parent and a subsidiary are independent entities and a subsidiary's contacts with the forum are not attributed to the parent corporation for jurisdictional purposes. Wesleyan Pension Fund, Inc. v. First Albany Corp., 964 F.Supp. 1255, 1261 (S.D. Ind. 1997) (citing Cannon Mfg. Co. v. Cudahy Packing Co., 267 U.S. 333, 336 (1925)). Indeed, the Seventh Circuit has concluded that when corporate formalities are observed, permitting the activities of the subsidiary to be the basis for exercising jurisdiction over the parent violates due process. Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp., 230 F.3d 934, 944 (7th Cir. 2000). Overcoming this presumption requires clear evidence that either: (1) the parent utilizes its subsidiary in such a manner that an agency relationship can be perceived; (2) the parent has greater control over the subsidiary than is normally associated with common ownership and directorship; or (3) the subsidiary is merely "an empty shell." Wesleyan, 964 F.Supp. at 1261-62. The Court of Appeals recognized this general doctrine but con-

7

cluded that the Coxes overcame the presumption by establishing that (1) LinkAmerica and all of its subsidiaries had the same address in Oklahoma; (2) the same persons served as the Board of Directors for both LinkAmerica and Hi-Cube; (3) the annual shareholder meetings for Link-America and Hi-Cube were held at the same place and on the same day in 2000, 2001, and 2002 with only the same three people present; (4) LinkAmerica paid Hi-Cube's legal fees in defense of this lawsuit from March 2002 through March 2003; and (5) Hi-Cube's checks carried the legend that Hi-Cube was a "LinkAmerica Company." LinkAmerica, 828 N.E.2d at 395.

The Court of Appeals relied on Wesleyan, where the district court found that the presumption of separate corporate existences had been overcome. We do not find Wesleyan applicable here. In that case the parent corporation and its several subsidiaries had the same principal place of business and operated their business, including their contacts with the plaintiffs, from that location. The same three individuals were not merely the sole controlling principals, shareholders, officers, and directors of the parent corporation and all its subsidiaries. They also served as the operating personnel who engaged in telephone conversations and corresponded with the plaintiffs on behalf of the various subsidiaries over several years. They ultimately secured the plaintiffs' purchase of $14.2 million in real estate securities from eight subsidiaries in seven similar transactions. Wesleyan, 964 F.Supp. at 1263. In sum, not only the directors and some corporate officers, but also the operating personnel were common to both parent and subsidiaries and acted indiscriminately for both. They failed to observe any differentiation between the parent and its subsidiaries at the operating level. Thus, it was entirely reasonable to attribute the subsidiaries' contacts with the forum state to the parent corporation based on the failure to observe corporate formalities and the lack of differentiation between the parent and subsidiaries.

The case before us is markedly different. First, and most importantly, although Link-America and Hi-Cube maintained their home office at the same address in Oklahoma, Hi-Cube conducted its daily business operations, including the transaction with Cox, through its separate employees from its separate business location in Indiana. Hi-Cube's president and his subordinates made all daily business and operating decisions for Hi-Cube. None of these persons was a LinkAmerica employee. Although two of the three directors common to LinkAmerica and Hi-Cube were also officers of both corporations, the president of Hi-Cube never served as a director, officer, or employee of LinkAmerica. LinkAmerica and Hi-Cube shared the same board of di-

8

rectors, but this is not unusual in a corporate family. It does not suggest the operating personnel are common or indicate a failure to make clear in what capacity a person is acting. See U.S. v. Bestfoods, 524 U.S. 51, 69 (1998) (noting that "it is entirely appropriate for directors of a parent corporation to serve as directors of its subsidiary" (internal quotation marks omitted) (quoting American Protein Corp. v. AB Volvo, 844 F.2d 56, 57 (2d Cir. 1988))). Similarly, the fact that shareholder meetings for LinkAmerica and Hi-Cube occurred in the same location and on the same day does not support a conclusion that LinkAmerica exerts greater than normal control over Hi-Cube as its subsidiary. As the Seventh Circuit recently explained: "[p]arents of wholly owned subsidiaries necessarily control, direct, and supervise the subsidiaries to some extent." Purdue Research Found. v. Sanofi-Synthelabo, 338 F.3d 773, 778 n.17 (7th Cir. 2003) (internal quotation marks omitted) (quoting IDS Life Ins. Co. v. SunAmerica Life Ins. Co., 136 F.3d 537, 540 (7th Cir. 1998)). Every parent of a wholly owned subsidiary has absolute control in that the parent has the power to direct the subsidiary to take any act the parent desires. "Control" in the Wesleyan context refers to the management of the subsidiary's operational activities, not passive ownership or policy direction.

The imprint "a LinkAmerica company" on the check that Hi-Cube gave to Cox does not support any inference that Hi-Cube is an agent of LinkAmerica or a mere "empty shell." The checks in this record were written by Hi-Cube to pay Cox, who contracted only with Hi-Cube's president and other employees of Hi-Cube. The checks were drawn on Hi-Cube's separate owner-operator account and the imprint did nothing more than note that Hi-Cube was a "Link-America company," i.e. a member of the same corporate family. This designation does not suggest that Hi-Cube was the same entity as LinkAmerica or acting as an agent for LinkAmerica.

The payment of Hi-Cube's legal fees from March 2002 through May 2003 by Link-America amounts to no more than an intercompany loan. The Seventh Circuit has recently observed that "a corporate parent may provide administrative services for its subsidiary in the ordinary course of business without calling into question the separateness of the two entities for purposes of personal jurisdiction." Cent. States, 230 F.3d at 945. Thus, common corporate infrastructure such as information technology and accounting services do not place the parent in the subsidiary's shoes whenever the subsidiary conducts business. Supplying necessary financing to the subsidiary is in the same category.

9

Finally, LinkAmerica did nothing to erode the presumption of separateness from its subsidiaries. Hi-Cube and LinkAmerica each maintained separate books, records, accounts, and corporate minutes, thus, observing corporate formalities. LinkAmerica does not maintain an office or other place of business in Indiana; has no registered agent in Indiana; has no employees in Indiana; does not pay taxes in Indiana; does not advertise in Indiana; and has no telephone facilities, bank accounts, or other real or personal property in Indiana. LinkAmerica and Hi-Cube have separate employee payroll accounts, and LinkAmerica has never represented Hi-Cube as a department or division of LinkAmerica.

For the foregoing reasons, we conclude that the Coxes have not provided anything to overcome the presumption that LinkAmerica and Hi-Cube are institutionally independent. As a result, Hi-Cube's contacts with the state cannot be attributed to LinkAmerica. Allowing the exercise of personal jurisdiction over a parent corporation solely based on the fact of ownership of a subsidiary is not permitted by due process. Cf. Keeton, 465 U.S. at 781 n.13 ("[N]or does jurisdiction over a parent corporation automatically establish jurisdiction over a wholly owned subsidiary."). Because LinkAmerica does not have sufficient "minimum contacts" with the state, it is unnecessary to engage in a "reasonableness" analysis.

LinkAmerica argues that the Court of Appeals incorrectly held that LinkAmerica's corporate veil should be pierced to exercise personal jurisdiction over LinkAmerica. We do not see the issue as one of piercing the corporate veil, and the Court of Appeals appropriately made no reference to piercing the corporate veil in its personal jurisdiction analysis. Piercing the veil is a doctrine of liability, and "minimum contacts" is a jurisdictional concept. See Cent. States, 230 F.3d at 944. Piercing may, in some instances, be based on facts that also support the assertion of jurisdiction over the parent of a subsidiary. Otherwise stated, the same conduct of a foreign corporate defendant may in some cases expose it to both personal jurisdiction and liability under the laws of a particular forum. Wesleyan appears to be such a case because the same operating personnel were acting simultaneously for the parent and its subsidiaries. But personal jurisdiction raised by a motion to dismiss is a preliminary question that must be resolved before addressing the issue of piercing the veil. Cent. States, 230 F.3d at 944.

## Conclusion

The trial court's denial of LinkAmerica's motion to dismiss for lack of personal jurisdiction is reversed.

Shepard, C.J., and Dickson, Sullivan, and Rucker, J.J., concur.