## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 08 2015, 9:20 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT

Rebecca L. Loeffler
H. Joseph Certain
Kiley, Harker & Certain
Marion, Indiana

ATTORNEYS FOR APPELLEE

Tara K. Tauber
Rhett L. Tauber
Tauber Law Offices
Schererville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Bill J. Bowers, <br> *Appellant-Defendant,* <br><br> v. <br><br> Jack Weichman, <br> *Appellee-Plaintiff* | May 8, 2015 <br><br> Court of Appeals Case No. 45A04-1411-CT-515 <br><br> Appeal from the Lake Superior Court <br> The Honorable Calvin D. Hawkins, Judge <br> Trial Court Cause No. 45D02-1301-CT-11 |

**Bradford, Judge.**

# Case Summary

[1] On September 27, 2010, Appellant-Defendant Bill J. Bowers and Appellee-Plaintiff Jack Weichman attended a Chicago Bears/Green Bay Packers football game at Soldier Field in Chicago. Both Bowers and Weichman watched the

game from the suite that belonged to Appellee-Defendant Horseshoe Hammond, LLC ("Horseshoe"). At some point during the game, Bowers and Weichman were involved in a physical altercation. As a result of the physical altercation, Weichman claims that he suffered serious and permanent injuries to his face.

[2] On August 2, 2012, Weichman filed suit against Bowers, Horseshoe, Appellee-Defendant Monterrey Security Consultants, Inc., and Appellee-Defendant Delaware North Companies Sportservices, Inc. (collectively, the "Defendants").[1] Weichman subsequently amended his complaint to assert that he suffered personal injuries as a result of the physical altercation with Bowers. Bowers filed a motion to dismiss on April 4, 2013, claiming that the trial court lacked personal jurisdiction over him. The trial court denied Bowers's motion to dismiss and certified the matter for interlocutory appeal.

[3] Bowers contends on appeal that the trial court erred in denying his motion to dismiss. Upon review, we conclude that because the incident in question took place in Illinois and Bowers did not have significant contacts with the State of Indiana, we conclude that Indiana Courts do not have personal jurisdiction over Bowers. Accordingly, we reverse the judgment of the trial court and

---

[1] Monterrey Security Consultants, Inc. provided security services in the Horseshoe suite and Delaware North Companies Sportservices, Inc. provided food and beverage services in the Horseshoe suite.

remand to the trial court with an instruction to enter an order dismissing Weichman's claims against Bowers.

# Facts and Procedural History

[4] In the fall of 2008 Christina Herrera, the then-National Casino Marketing Manager for Horseshoe, spoke to Jennifer Rivers from the Harrah's Casino in Las Vegas. Rivers indicated to Herrera that she had "a group of folks that wanted to come and enjoy [Horseshoe's] suite for the Packers/Bears' game." Appellant's App. p. 53. This group included Bowers, a resident of Wisconsin who does not conduct business or own any real property in Indiana. Because Bowers had never been to Horseshoe prior to Rivers's request, Herrera looked Bowers up in Horseshoe's casino marketing system to verify that Bowers qualified for the tickets. Herrera determined that Bowers, who had attained "diamond player" status, qualified for the tickets. Appellant's App. p. 60.

[5] After determining that the group, again including Bowers, qualified for the tickets, Herrera reserved rooms at a hotel in Chicago for the group. In exchange for the complimentary hotel room and tickets, "the understanding is that [the group would] come to [Horseshoe] and play, and then [ ] pick up their tickets on [Horseshoe] property." Appellant's App. p. 58. Upon picking up the tickets in December of 2008, Bowers and his friends stayed at Horseshoe for approximately six hours.

[6]   Rivers again contacted Herrera about tickets to the Bears/Packers football game in the fall of 2010. Bowers and his friends were again given complimentary hotel rooms in Chicago and tickets to watch the football game from Horseshoe's suite. Similar to 2008, Bowers and his friends came to Horseshoe to pick up the tickets. On this visit, the group stayed for approximately eight hours. During their visit to Horseshoe, Bowers and his friends also received a complimentary dinner at the restaurant located within Horseshoe.

[7]   On September 27, 2010, Bowers attended a Chicago Bears game at Soldier Field in Chicago as a guest of Harrah's Las Vegas, sitting in Horseshoe's suite. Weichman and his girlfriend also attended the Chicago Bears game at Soldier Field on September 27, 2010, and sat in Horseshoe's suite. Throughout the course of the game, the occupants of the suite were provided with alcoholic beverages. Weichman claims that he and his girlfriend were harassed and ridiculed by Bowers throughout the game. Weichman further claims that as the game ended, Bowers physically battered him. As a result of this alleged physical altercation, Weichman claims that he sustained serious and permanent injuries to his face.

[8]   On August 2, 2012, Weichman filed suit against the Defendants. Weichman subsequently amended his complaint to assert that he suffered personal injuries after being physically battered by Bowers in the Horseshoe suite at Soldier Field in Chicago. Bowers filed a motion to dismiss on April 4, 2013, claiming that the trial court lacked personal jurisdiction over him. On October 10, 2014, the

trial court denied Bowers's motion to dismiss and certified the matter for interlocutory appeal.

# Discussion and Decision

Bowers contends that the trial court erred in denying his motion to dismiss because Indiana courts do not have personal jurisdiction over him.

> "Personal jurisdiction is a question of law...." *Anthem Ins. Co. v. Tenet Healthcare Corp.*, 730 N.E.2d 1227, 1237 (Ind. 2000). As with other questions of law, a determination of the existence of personal jurisdiction is entitled to de novo review by appellate courts. *Id*. We do not defer to the trial court's legal conclusion as to whether personal jurisdiction exists. *Id*. However, personal jurisdiction turns on facts, typically the contacts of the defendant with the forum, and findings of fact by the trial court are reviewed for clear error. *Id*. at 1238.

*LinkAmerica Corp. v. Cox*, 857 N.E.2d 961, 965 (Ind. 2006).

"When a person attacks the court's jurisdiction over him, he bears the burden of proof upon that issue by a preponderance of the evidence, unless the lack of jurisdiction is apparent upon the face of the complaint." *Attaway v. Omega*, 903 N.E.2d 73, 76 (Ind. Ct. App. 2009) (citing *Lee v. Goshen Rubber Co.*, 635 N.E.2d 214, 215 (Ind. Ct. App. 1994), *trans. denied*). "When reviewing a motion to dismiss for lack of personal jurisdiction, we apply a de novo standard of review." *Id*. (citing *Dexter Axle Co. v. Baan USA, Inc.*, 833 N.E.2d 43, 48 (Ind. Ct. App. 2005)). "However, personal jurisdiction turns on facts, typically related to the defendant's contacts with the forum, and findings of fact by the

trial court are reviewed for clear error." *Id.* (citing *LinkAmerica*, 857 N.E.2d at 965).

[11]    In *Attaway*, we explained that

> [u]ntil fairly recently, determining personal jurisdiction in Indiana required an analysis under both Indiana Trial Rule 4.4 (Indiana's long arm provision) and the federal due process clause. In 2006, however, our supreme court clarified that a 2003 amendment to Indiana Trial Rule 4.4(A) "was intended to, and does, reduce analysis of personal jurisdiction to the issue of whether the exercise of personal jurisdiction is consistent with the Federal Due Process Clause." *Id.* at 967.
>
> This federal due process analysis is well-settled. In *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S. Ct. 154, 90 L.Ed. 95 (1945), the U.S. Supreme Court established that a nonresident defendant must have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* at 316, 66 S. Ct. 154 (citation and quotation marks omitted). The Court later clarified this test to mean that the nonresident defendant must engage in "some act by which [he] purposefully avails [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 2 L.Ed.2d 1283 (1958).

*Id.*

[12]    It is well-established that there are two types of personal jurisdiction, general and specific. *Id.* "If the defendant's contacts with the state are so 'continuous and systematic' that the defendant should reasonably anticipate being haled into the courts of that state for any matter, then he is subject to general jurisdiction, even in causes unrelated to his contacts with the forum state." *Id.* (citing *LinkAmerica*, 857 N.E.2d at 967; *Helicopteros Nacionales de Colombia, S.A.*

*v. Hall*, 466 U.S. 408, 415 n.9 (1984)). The parties agree, as do we, that Bowers is not subject to general jurisdiction in Indiana.

[13] Specific jurisdiction, on the other hand, "requires that the defendant has purposefully availed himself of the privilege of conducting activities within the forum state and that his conduct and connection with that state are such that he should reasonably anticipate being haled into court there." *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985)). "A single contact with the forum state may be sufficient to establish specific jurisdiction over a defendant if it creates a 'substantial connection' with the forum state and the suit is related to that connection." *Id.* at 77 (citing *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)). However, "[a] defendant cannot be haled into a jurisdiction 'solely as a result of random, fortuitous, or attenuated contacts or of the unilateral activity of another party or a third person.'" *Id.* (quoting *Burger King Corp.*, 471 U.S. at 475).

[14] "If the defendant's contacts with the forum state are sufficient to support a finding of general or specific jurisdiction, due process requires that the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Id.* (quoting *Burger King Corp.*, 471 U.S. at 476).

> To make this determination, the court may consider five factors: (1) the burden on the defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several States in furthering fundamental substantive shared policies. [*Burger King Corp.*, at 476-77].

*Id.*

[15]    In claiming that the trial court erred in denying his motion to dismiss, Bowers argues that the facts of the instant matter are similar to those presented in *Rosowsky v. University of Colorado*, 653 N.E.2d 146 (Ind. Ct. App. 1995), *trans. denied*. Rosowsky, who at the time was a professor at Purdue University, applied for a faculty position at the University of Colorado. 653 N.E.2d at 147. Rosowsky interviewed for the position over the course of three days in April of 1993. *Id.* at 148. In May of 1993, the chair of the relevant department was vacationing in Michigan. *Id.* The chair of the department set up a dinner meeting with Rosowsky at a yacht club in Michigan City, Indiana. *Id.* During this meeting, the chair of the department notified Rosowsky that he anticipated that the department would be making an offer of employment. *Id.* In June of 1993, the University of Colorado sent Rosowsky an offer of employment. *Id.* The terms of the offer made it clear that the offer was contingent upon approval by the Board of Regents. *Id.* Rosowsky accepted the offer. *Id.* The Board of Regents, however, did not approve of Rosowsky's employment, and the offer of employment was withdrawn. *Id.*

[16]    Rosowsky subsequently filed a breach of contract suit against the University of Colorado in Tippecanoe County, Indiana. *Id.* Upon review, we noted that the University of Colorado is not generally engaged in business in Indiana, has no registered agent, telephone facilities, bank accounts, or property in Indiana. *Id.* at 149. Further, the majority of the contact between the University of Colorado

and Rosowsky consisted of letters and phone calls, which do not subject a non-resident to jurisdiction in the state of the recipient. *Id*. The only contact that took place in Indiana was a two-hour dinner meeting that was occasioned by the fact that the department chair was vacationing in Michigan and was available to meet Rosowsky at a mutually convenient location. *Id*. This meeting fortuitously occurred in Indiana and could "just as easily have occurred in a restaurant in Michigan instead of in an Indiana border city." *Id*. Based on these circumstances, we concluded that "[a] single visit by an agent to the forum state for social and business discussions does not subject the nonresident to jurisdiction in that state when the visit is incidental to an agent's trip to another state." *Id*.

[17] Weichman, for his part, argues that the facts of the instant matter are more similar to those presented in *Attaway*. In *Attaway*, we considered whether Indiana courts had personal jurisdiction over two residents of Idaho, the Attaways, who had entered into an agreement over eBay to purchase a vehicle from two residents of Indiana. *Id*. at 75. After receiving the vehicle, the Attaways filed a claim with PayPal (the online payment service owned by eBay which was used to submit payment for the vehicle), asking for a refund. *Id*. In requesting a refund, the Attaways claimed that the vehicle was "significantly not-as-described in its eBay listing." *Id*. (internal record quotation omitted). After the Attaways took possession of the vehicle and rescinded payment, the Indiana residents filed suit against the Attaways in an Indiana trial court seeking $5,900.00 in damages. *Id*. at 76.

[18] The Attaways subsequently filed a motion to dismiss, in which they claimed that the Indiana trial court lacked personal jurisdiction over them. *Id.* The trial court denied the Attaways' motion to dismiss. *Id.* Upon review, we affirmed the judgment of the trial court, concluding that with respect to the purchase of the vehicle over eBay, "the Attaways purposefully availed themselves of the privilege of conducting activities within the State of Indiana such that they could reasonably anticipate defending a lawsuit in Indiana related to this eBay purchase." *Id.* at 79.

[19] While the facts of the instant matter do not directly mirror the facts presented in either *Rosowsky* or *Attaway*, we believe that the type of contacts Bowers had with the State of Indiana are more similar to those had by the agent for the University of Colorado than the internet purchasers of a vehicle from sellers who were residents of Indiana. Again, through his "diamond player" status with Harrah's Casino in Las Vegas, Bowers qualified to receive tickets to a Chicago Bears/Green Bay Packers football game. This game took place at Soldier Field in Chicago. The tickets were obtained by representatives from Harrah's from representatives of Horseshoe.

[20] Bowers's only contacts with the State of Indiana were occasioned on the requirement that he pick up the tickets from Horseshoe and spend some time gambling in the casino. The first contact took place in 2008 and has no relation to the instant matter. The second contact took place in the fall of 2010, prior to the alleged incident between Bowers and Weichman. Bowers could have easily been required to pick up the tickets from a location in Illinois or Michigan,

rather than Indiana. Bowers's minimal contacts with Indiana were fortuitously due to Horseshoe's location within a few miles of the Indiana/Illinois state line on Indiana's Lake Michigan shorefront. Further, nothing in the record even suggests that Bowers encountered Weichman while at Horseshoe or in the State of Indiana. Weichman does not allege that he ever had any contact with Bowers within the State of Indiana. The only alleged contact between Weichman and Bowers occurred at Soldier Field in Chicago.

[21] Again, it is undisputed the alleged altercation between Bowers and Weichman took place in Illinois, not in Indiana. As such, Indiana has no real interest in adjudicating the dispute. In addition, there would be a great burden upon Bowers if we were to allow personal jurisdiction over Bowers in Indiana. Bowers is a Wisconsin resident who is not regularly engaged in business in Indiana. He does not own any property in Indiana and seemingly has no connection to Indiana other than his two short visits to Horseshoe, one of which occurred in 2008 and the other of which occurred in 2010. Further, to the extent that Weichman may be entitled to relief, nothing in the record suggest that he could not obtain said relief from another jurisdiction, *i.e.*, Illinois.

[22] Upon review, we conclude that under the facts of the instant case, due process considerations preclude Indiana courts from asserting jurisdiction over Bowers. As such, we conclude that the trial court erred in denying Bowers's motion to dismiss for lack of personal jurisdiction. We therefore reverse the judgment of

the trial court and remand to the trial court with an instruction to enter an order dismissing Weichman's claims against Bowers.

[23] The judgment of the trial court is reversed and the matter remanded to the trial court with instructions.

Vaidik, C.J., and Kirsch, J., concur.