FILED

Sep 16 2016, 5:46 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Matthew D. Barrett | Patrick E. Chavis, III |
| Logansport, Indiana | Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

Jerry Arnold d/b/a Arnold's
Jewelry and Gifts, Inc.,

*Appellant-Plaintiff,*

v.

Marcellus Long, Jr., Marcellus
Long, Jr., P.C. a/k/a Law
Office of Marcellus Long,
P.L.L.C., and Hatchett Dewalt
& Hatchett, P.L.L.C. a/k/a
Hatchett DeWalt & Hatchett,
P.C.,

*Appellees-Defendants.*

September 16, 2016

Court of Appeals Cause No.
09A02-1511-PL-2101

Appeal from the Cass Circuit Court

The Honorable Leo T. Burns, Judge

Cause No. 09C01-1501-PL-4

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellant-Plaintiff, Jerry Arnold d/b/a Arnold's Jewelry and Gifts, Inc. (Arnold), appeals the grant of a motion to dismiss made by Appellees-Defendants, Marcellus Long Jr.; Marcellus Long Jr. P.C. a/k/a law office of Marcellus Long PLLC (Long); and Hatchett DeWalt & Hatchett PLLC (Hatchett DeWalt) (collectively, Appellees).

We affirm.

## ISSUE

Arnold raises three issues on appeal, one of which we find dispositive and restate as: Whether the trial court properly dismissed Arnold's Complaint for lack of personal jurisdiction.

## FACTS AND PROCEDURAL HISTORY

Arnold is engaged in the business of selling jewelry and specialty gifts in Logansport, Indiana. Long is a licensed attorney in the State of Michigan, and his law office is located at 485 Orchard Lake Road, Pontiac, Michigan. Hatchett DeWalt is a Michigan law firm engaged in the practice of law with an office located at 485 Orchard Lake Road, Pontiac, Michigan. "Long was an employee, agent, member, and/or servant acting within the scope of his employment, partnership, joint venture, and/or association with [] Hatchett DeWalt with respect to the subject matter" of Arnold's Complaint. (Appellant's App. p. 11).

[5] Michigan Commercial Resource Locator, Inc. (Michigan Commercial) is a Michigan corporation with an office in Detroit, Michigan, and is engaged in the business of facilitating commercial mortgage loans and other commercial real estate debt. When Arnold wanted to expand his business, a mortgage broker referred him to Sabastian Restum a/k/a Sam Ajami (Restum)—an agent of Michigan Commercial. Through Restum, Michigan Commercial agreed to obtain lenders to loan Arnold $850,000.00 through a secured line of credit. In accordance with that arrangement, Michigan Commercial lawyer's, the Appellees, actively negotiated and drafted several loan documents which included a Term Sheet Agreement, Facilitation Agreement, and Non-Compete Agreement. Pursuant to the Facilitation Agreement, Arnold agreed to pay Michigan Commercial a loan processing fee of $20,700 upon signing the loan documents. Clause 3D of the Facilitation Agreement stated that the fee was "to be used for all costs associated with obtaining the loan including but not limited to appraisal cost, survey costs, environmental costs, and title insurance fees." (Appellant's App. p. 29). That clause further stated that if Michigan Commercial "does not close the loan for any reason, all fees will be refunded." (Appellant's App. p. 29).

[6] On September 23, 2013, Jim Jarvis (Jarvis), Michigan Commercial's agent, travelled from Michigan to Arnold's jewelry shop in Indiana to obtain Arnold's signature on the loan agreements. Two days after he signed the loan documents, on September 25, 2013, Arnold sent a cashier's check for $20,700 to the Appellees, and it was subsequently deposited by the Appellees into an

Interest on Lawyer Trust Account (IOLTA) at a PNC Bank in Pontiac, Michigan. Sometime thereafter, Restum communicated to Arnold that Michigan Commercial had successively found possible lenders and the loan was bound to close on April 25, 2014.

[7] On May 13, 2014, the Appellees wrote a letter to Arnold indicating that they had received instructions from Michigan Commercial to convey to him that the

> closing documents should be completed either Friday, May 16th or Monday, May 19th [, 2014] . . . My client apologizes for the lengthy time for this loan. The negotiations among the lending group regarding the loan structure have caused delays in the transaction, coupled with the fact that they are working at their own pace to maintain a certain level of comfort.

(Appellant's App. p. 39). Sometime after the Appellees' letter, a Federal Bureau of Investigation (FBI) agent contacted Arnold and advised him that he had been a victim of fraud by Appellees. The FBI agent advised Arnold that Restum and several others had been taken into custody for federal criminal charges involving mail and wire fraud and conspiracy to commit wire fraud. On May 28, 2014, Restum was charged with wire fraud in violation of 18 U.S.C. §§ 1343 and 1349. The complaint focused on an illegal advance fee scheme operated by Restum and several others. Specifically, the complaint alleged that in executing the scheme to defraud, Restum and several others represented that Michigan Commercial acted as a "facilitator" in procuring large commercial loans from non-conventional lenders having an 80% success rate in closing such loans. Once a party agreed to apply for a commercial loan,

they were required to pay a loan processing fee to Michigan Commercial before being funded. Arnold was informed that he had to pay $50,000 as an upfront fee, but when he indicated that he could not afford that, the fee was reduced by half. Thereafter, on September 25, 2013, Arnold purchased a cashier's check and addressed it to Long's firm. On April 9, 2014, Restum represented to Arnold that the loan would close on April 25, 2014.

[8] Based on the fact that the loan had not closed on its proposed date, on June 30, 2014, Arnold, through his lawyer, sent a demand letter to the Appellees demanding a refund of the entire $20,700.00. The letter stated, in part:

> The loan was supposed to close on April 25, 2014. To date, that has not happened. Meanwhile a federal criminal case was filed in the U.S. District Court for the Eastern District of Michigan, [] against [] Restum a/k/a Sam Ajami alleging a fraud scheme involving [Michigan Commercial] . . . []Arnold and his business are mentioned as one of several victims in the criminal complaint and your law firm is also stated as being involved in these transactions.

> [] Arnold has made repeated requests for the return of his $20,700.00, but he has not been refunded a dime. . . . The $20,700.00 fee was unearned and should have been returned back to [] Arnold at his request since your client did not fulfill its obligations under the terms of the Facilitator Agreement.

> On behalf of [] Arnold and his business, I am demanding that your law firm refund the entire $20,700.00 by no later than Friday, July 18. 2014. . . . If I am not in actual receipt of the certified check or money order by that date, then Arnold and his business will immediately file a lawsuit against all responsible parties, including you and your law firm, and seek full damages including attorney fees and costs. . . .

(Appellant's App. p. 46).

[9] Not having heard from the Appellees, on January 22, 2015, Arnold filed a Complaint, alleging breach of contract, fraud, conversion, negligence, and unjust enrichment. On March 26, 2015, Arnold filed an Amended Complaint. On April 13, 2015, the Appellees responded by filing a Motion to Dismiss for Want of Personal Jurisdiction. On May 5, 2015, Arnold filed his response in opposition to the Appellees' motion. On July 9, 2015, a hearing was held on the Appellees' motion. At the start of the hearing, Arnold's counsel requested to present evidence in the form of oral testimony from Arnold. The trial court agreed, but the Appellees' counsel objected on the basis that Indiana Trial Rule 4.4 "does not contemplate an evidentiary hearing." (Transcript p. 8). The trial court sustained the objection, but allowed Arnold's counsel to proffer Arnold's anticipated testimony had he been allowed to testify. After counsels presented their oral arguments, the trial court took matter under advisement. Thereafter, the parties filed their proposed findings of facts and conclusions of law, and on November 13, 2015, the trial court entered an Order granting the Appellees' motion to dismiss, and it issued findings of fact and conclusions thereon.

[10] Arnold now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Standard of Review*

[11] Arnold contends that the trial court erred in granting the Appellees' motion to dismiss for lack of jurisdiction. A motion to dismiss pursuant to T.R. 12(B)(2)

is a proper method of challenging the personal jurisdiction of a trial court. *Lee v. Goshen Rubber Co., Inc.*, 635 N.E.2d 214, 215 (Ind. Ct. App. 1994), *trans. denied*. Personal jurisdiction is a question of law. *LinkAmerica Corp. v. Albert*, 857 N.E.2d 961, 965 (Ind. 2006). Therefore, our review is *de novo*, and we do not defer to the trial court's legal conclusion as to whether personal jurisdiction exists. *Id*. However, to the extent that the issue of personal jurisdiction turns on disputed facts, the trial court's findings of fact are reviewed for clear error. *Id*.

## II. *Personal Jurisdiction*

[12] Personal jurisdiction refers to a court's power to impose judgment on a particular defendant. *Boyer v. Smith*, 42 N.E.3d 505, 509 (Ind. 2015). Indiana Trial Rule 4.4(A) serves as Indiana's long-arm statute governing the extent of personal jurisdiction. It provides in part that "a court of this state may exercise jurisdiction on any basis not inconsistent with the Constitutions of this state or the United States." Ind. Trial Rule 4.4(A). This provision "was intended to, and does, reduce analysis of personal jurisdiction to the issue of whether the exercise of personal jurisdiction is consistent with the Federal Due Process Clause." *LinkAmerica Corp.*, 857 N.E.2d at 967.

[13] Before an Indiana court can properly assert personal jurisdiction over a defendant, the Due Process Clause of the Fourteenth Amendment requires that the defendant have certain "minimum contacts" with the state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice*." Id.* (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316

(1945)) (internal quotation marks omitted). If the defendant's contacts with the state are so "continuous and systematic" that the defendant should reasonably anticipate being haled into the state's courts for any matter, the defendant is subject to general jurisdiction. *Id*. (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 n.9 (1984)). If the defendant's contacts with the state are not "continuous and systematic," the defendant may be subject to specific jurisdiction "if the controversy is related to or arises out of the defendant's contacts with the forum state." *Id*. (citing *Helicopteros*, 466 U.S. at 414 & n.8). A single contact with the forum state may be sufficient to establish specific jurisdiction over a defendant, if it creates a "substantial connection" with the forum state and the suit is related to that connection. *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957). But a defendant cannot be haled into a jurisdiction "solely as a result of random, fortuitous, or attenuated contacts or of the unilateral activity of another party or a third person." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–77 (1985) (internal quotation marks omitted) (citing *Helicopteros*, 466 U.S. at 417; *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 299 (1980)).

[14] When evaluating a defendant's contacts with the forum state, a court should consider:

> (1) whether the plaintiff's claim arises from the defendant's forum contacts; (2) the overall contacts of the defendant or its agent with the forum state; (3) the foreseeability of being haled into court in that state;

> (4) who initiated the contacts; and (5) whether the defendant expected or encouraged contacts with the state.

*Wolf's Marine, Inc. v. Brar*, 3 N.E.3d 12, 15 (Ind. Ct. App. 2014). But even if a defendant's contacts are sufficient to confer jurisdiction, due process requires the assertion of jurisdiction over the defendant be reasonable. *LinkAmerica*, 857 N.E.2d at 967. Reasonableness of exercising jurisdiction over a defendant is determined by weighing the following factors:

> (1) the burden on the defendant; (2) the forum State's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenience and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several States in furthering fundamental substantive social policies.

*Id*. at 967-68 (citing *Burger King Corp.*, 471 U.S. at 476-77).

[15] The record shows that after Michigan Commercial agreed to loan Arnold money to expand his business, the Appellees drew up several loan documents on behalf of Michigan Commercial. Prior to entering that agreement, Michigan Commercial, Long, and Arnold communicated via a conference call and negotiated the terms of the loan. Thereafter, Jarvis, an individual working in the Appellees' firm, travelled on two occasions from Michigan to Indiana, and on September 2013, he successively obtained Arnold's signature for the loan. Following a successful visit in Indiana, Jarvis sent a letter to the Appellees the next day, forwarding the duly signed loan agreements together with a cashier's check of $20,700 payable to Long's law firm. Sometime in April 2014, Restum,

the person who initiated the whole transaction, informed Arnold that the loan would close on April 25, 2014. In a letter dated May 13, 2014, the Appellees wrote to Arnold stating that there were delays in the closing of the loan but closing was imminent on either May 16 or 19, 2014. Then, in an email dated May 20, 2014, the Appellees sent two additional loan documents for Arnold to sign. The loan did not close on the proposed dates, and the $20,700 fee was not refunded to Arnold. At the motion to dismiss hearing, the Appellees' counsel argued that the Appellees were residents of Michigan, licensed to practice there, and do not conduct business in Indiana. The Appellees also challenged the communications indicated above stating they were insufficient to establish personal jurisdiction. Arnold maintained that the contacts were sufficient to establish personal jurisdiction.

[16] In the Order dismissing Arnold's Complaint, the trial court entered the following findings of fact and conclusions of law, stating, in part,

> 5. On or about September 23, 2013, Michigan Commercial entered into a written "Facilitation Agreement" with [Arnold].
>
> 6. On or about September 25, 2013, [Arnold] mailed a cashier's check in the amount of $20,700; payable to the Law Office of [] Long, along with a signed Facilitation Agreement to Michigan Commercial.
>
> 7. The Facilitation Agreement was prepared by Hatchett DeWalt [].
>
> 8. Paragraph M of the Facilitation Agreement contains the language, "This agreement shall be interpreted in accordance with and governed by the laws of the State of Michigan, without regard to choice of law

principles. The parties consent to the jurisdiction of the courts of Michigan."

9. Long received the Cashier's Check and it was deposited in the law firm's IOLTA [] at PNC Bank in Pontiac[,] Michigan.

10. Despite representations made to [Arnold] by letter dated May 13, 2014, from the Michigan [l]aw [f]irms that the closing of a business loan was imminent, no business loan transaction ever materialized.

11. [Arnold] is a victim of criminal fraud perpetrated by Michigan Commercial[], a client of the Michigan [l]aw [f]irms.

12. [Arnold] has made demand on the Michigan [l]aw [f]irms for the return of the $20,700.00[].

13. The money has not been returned to [Arnold].

14. In addition [] in the preparation of the Facilitation [A]greement referred to in paragraph 6 of these findings, the Michigan [l]aw [f]irms had one email contact and one phone contact with [Arnold] regarding the business loan transaction between [Arnold] and Michigan Commercial[].

15. All acts by the Michigan [l]aw [f]irms related to the business loan transaction were made on behalf of Michigan Commercial[], a client of the Michigan [l]aw [f]irms.

Conclusions of Law

1. The contact between the Michigan law [f]irms and [Arnold] in Indiana are not so "continuous and systematic" that the . . . firms[] should have reasonably anticipated being haled into an Indiana court. Nothing in the record suggests that this court has general personal

jurisdiction of the Michigan [l]aw [f]irms. *LinkAmerica,*857 N.E.2d at 967.

2. The issue of whether this court has specific personal jurisdiction over the Michigan [l]aw [f]irms must be decided by application of the five factors set out by the U.S. Supreme Court in *Burger King* and applied in Indiana by our Supreme Court in *LinkAmerica*.

3. In this case, the burden on the Michigan [l]aw [f]irms to defend their actions in providing legal services to a client, which resulted in minimal contacts with this forum and [with Arnold] in this case, is excessive and does not comport with fair play and substantial justice.

4. Although it may be more convenient for [Arnold] to sue the Michigan [l]aw [f]irms in Indiana to attempt to recover money paid and to be awarded judgment for other damages, [Arnold] is more than able to file and prosecute this action in Michigan.

5. While Indiana may have an interest in protecting its businesses, that interest is minimized to a large extent in this case because [Arnold] sought out Michigan Commercial [] and the Michigan [l]aw [f]irm's involvement was limited to providing legal service to the Michigan [c]orporation and therefore Indiana's interest in protecting its business is completely overshadowed by the interest of Michigan in protecting its licensed lawyers from liability for wrongs committed [] against a party in another state.

6. The interstate judicial system's interest in obtaining the most efficient resolution of controversies is best served in Michigan where the Michigan [l]aw [f]irm's are located, where witnesses and documents are located and where service of process and discovery requests may be properly and legally enforced.

7. [Arnold's] interest in obtaining effective relief is better served where the Michigan [l]aw [firm's] personnel and resources are located.

8. The facts in this case do not demonstrate that there are any fundamental substantive social policies at stake in this controversy.

Based on the foregoing, the Michigan [l]aw [f]irms did not transact business in the State of Indiana and they do not have requisite minimum contacts with Indiana. The exercise of personal jurisdiction in Indiana over the Michigan [l]aw [f]irms offends traditional notions of fair play and substantial justice.

(Appellant's App. pp. 8-9).

[17] Here, the trial court found that the contacts between Arnold and the Appellees *were not continuous and systematic* to establish general jurisdiction. On the other hand, the trial court determined that the contacts were sufficient to establish specific jurisdiction. *See Burger King Corp.*, 471 U.S. at 474-75. (providing that specific jurisdiction may be asserted if the controversy is related to or arises out of the defendant's contacts with the forum state). The Supreme Court has held that after the plaintiff establishes that there are minimum contacts, the defendant then carries the burden of proving that asserting jurisdiction is unfair and unreasonable. *Id.* ("[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."). As noted, the reasonableness of exercising jurisdiction over a defendant is determined by weighing five factors, namely (1) the burden on the defendant; (2) the forum State's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenience and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient

resolution of controversies; and (5) the shared interest of the several States in furthering fundamental substantive social policies. *See LinkAmerica*, 857 N.E.2d at 967.

[18] Turning to the first factor, the burden on the defendant, Arnold argues that the trial court concluded, without elaborating, that the burden on the Appellees to defend their case in Indiana would be excessive. In advancing his claim, Arnold argues that "the state of Michigan is not situated hundreds of miles across the country—it borders Indiana. This court has stated that with the advancements in travel and communication technology, defending oneself in another state than where one resides is not a severe burden as it once was. *Saler [v. Irick*, 800 N.E.2d 960, 970 (Ind. Ct. App. 2003)]." (Appellant's Br. p. 15). Though it is always somewhat burdensome to defend a lawsuit away from home, it is not a burden that violates due process in this instance. Taking judicial notice as to the respective locations involved, we agree with Arnold that the burden on the Appellees' to defend against Arnold's Complaint in Indiana rather than Michigan would not be great; however, the fact that the tortious claims alleged in Arnold's Complaint are intertwined with an action previously filed in a Michigan federal court, diminishes the weight of this factor. We find that the same considerations apply to the second and third factors: Indiana's interest in adjudicating the dispute, and the interest of Arnold in obtaining convenient and effective relief. With regard to both factors, the Appellees, who are Michigan lawyers, are licensed to practice in Michigan and do not have employees or agents regularly or routinely present in Indiana. In addition,

there is no evidence that the Appellees own real or personal property or maintain an office or business operations in Indiana for service of process. Notably, while Indiana may have an interest in protecting its businesses, that interest is minimized by the fact that the transaction herein involved Michigan lawyers and a Michigan corporation, as such, Indiana's interest is attenuated by Michigan's interest in disciplining their own attorneys and guarding against fraud committed by its residents.

[19] Regarding the fourth factor—the interstate judicial system's interest in obtaining the most efficient resolution of controversies—Arnold argues that the alleged tortious acts as stated in his Complaint, were expressly aimed at Indiana, therefore making Indiana the appropriate jurisdiction in obtaining the most efficient relief. *See Calder v. Jones*, 465 U.S. 783, 789-90 (1984). Despite the fact that the alleged tortious acts occurred in Indiana, the trial court found that the Appellees and witnesses were in Michigan and that discovery and services of process would be done in Michigan. In addition, there is a pending criminal complaint filed in a Michigan federal court relating to the alleged fraud as cited in Arnold's Complaint. Lastly, with respect to the fifth factor, shared interest of several states in furthering fundamental substantive social policies, neither party presented an argument concerning this reasonableness factor.

[20] Overall, we conclude that exercising jurisdiction over the Appellees would offend notions of fairness and reasonableness. Accordingly, the trial court properly dismissed Arnold's Complaint for lack of personal jurisdiction.

## CONCLUSION

In light on the foregoing, we conclude that the trial court properly dismissed Arnolds' Complaint for lack of personal jurisdiction.

Affirmed.

Kirsch, J. and Pyle, J. concur